OPINION OF THE COURT
Chief Judge Kaye.
Appellant New York State Department of Health denied licenses to respondents to operate certain medical facilities. At issue is whether, by not first granting respondents a hearing, appellant violated their due process rights in a protected property interest and, if not, whether the denial was arbitrary, capricious or tainted by bias.
Because respondents had nothing more than unilateral expectations of renewals and favorable dispositions of their applications, we reverse the Appellate Division and hold that respondents had no property interest requiring a hearing. Further, because appellant’s determination was not shown to be arbitrary, capricious or tainted by bias, we dismiss the petition.
I.
Respondent Daxor Corporation owns and operates a blood bank, semen bank and clinical laboratories in New York City through its divisions, respondents Idant and Scientific Medical Systems /ParkMed (SMS). Respondent Dr. Joseph Feldschuh, Daxor’s president as well as medical director of Idant and SMS, operates an artificial insemination facility on Idant’s premises.
*94 Appellant first required licensing of insemination facilities and semen banks in 1991 (see, Public Health Law § 4364). Idant’s semen bank, in existence since 1971, has operated under a provisional license granted by appellant in November 1991 (see, 10 NYCRR 52-2.2). Dr. Feldschuh’s insemination facility was authorized by provisional license issued in March 1993 (id.). Provisional licenses, which are temporary, are issued when a party applies for a permanent license, and they expire when that application is determined (10 NYCRR 52-2.2 [a]).
The blood bank and clinical laboratory facilities operated by Idant and SMS were licensed by the New York City Department of Health, which from 1964 to June 30, 1994 regulated such facilities operating exclusively within its borders (see, Public Health Law § 574 [former (2)] [omitted pursuant to L 1993, ch 436]). Respondents’ most recent City licenses expired, according to their own terms, on June 30, 1994.
Effective July 1, 1994, an amendment to Public Health Law § 574 gave appellant exclusive regulatory authority over licensing of these facilities State-wide (see, L 1993, ch 436). Appellant notified respondents, as it did all similar facilities about to come within its authority, that they would have to apply for State licenses to continue operation. However, they were permitted to do business, to the extent permitted by their City licenses, until resolution of their State license applications. During the spring of 1994, respondents sought State licenses under the new regulatory scheme for all of their blood bank and clinical laboratory facilities. At that time, their applications for semen bank and insemination facility licenses were still pending, and they were operating under provisional licenses.
By letter dated September 30, 1994, appellant proposed both to deny all of respondents’ applications and to terminate their provisional licenses, concluding that they "do not have the character and competence to ensure that the [medical sites] are operated in accordance with the law, and will be so operated.” Appellant explained:
"Despite numerous letters advising of specific violations, deficiency statements describing numerous substantiated violations of statutes and regulations, administrative hearings, New York City Department of Health tribunal actions, proposed and final denials of clinical laboratory and blood bank permit *95 applications, and serious administrative charges against the semen bank [respondents] continue to operate in a manner which is in violation of existing statutes, regulations, and standards.”
Supporting its determination appellant cited respondents’ previous violations. These included admissions of Dr. Feldschuh and SMS that tests were performed at another medical facility without a clinical laboratory permit, together with alteration of paperwork making it appear otherwise and then, as revealed by an investigation, continuing to do so after stipulating to discontinue such testing; operating an unlicensed laboratory in Buffalo; allowing an Idant employee to operate a clinical laboratory at his New Jersey home without a permit and altering paperwork to make it appear the testing was performed at Idant; and Idant’s performance of urine pregnancy testing after authorization to do so was removed from its license.
This was not the first time respondents were denied State licensing. In mid-1990, respondents applied for a permit to run a blood bank and clinical laboratory for the 1990-1991 and 1991-1992 regulatory years. Those applications were denied on the ground that respondents had violated various State regulations. A later application for a permit for 1992-1993 was also denied after appellant’s inspections revealed that the prior violations had not been corrected. Respondents’ CPLR article 78 proceeding challenging the denial of those licenses was dismissed by Supreme Court and is presently before the Appellate Division.
Respondents sought reconsideration of the proposed denial urging that many of the violations complained of no longer existed or were minimal and technical in nature. After reviewing respondents’ extensive additional submission, appellant denied the applications and terminated the provisional licenses.
Respondents commenced the instant article 78 proceeding alleging that the determination was biased, arbitrary and capricious, and that by failing to provide a hearing appellant had deprived them of due process. Supreme Court denied respondents’ petition but the Appellate Division reversed, concluding that the licenses respondents had previously received from the City constituted a protected property interest which could not be taken away without a hearing. Characterizing appellant’s actions as a revocation, the court examined *96 the legislative history of the amendment to the Public Health Law, and found no intent to eliminate existing licenses without a hearing. Because respondents had not been afforded a hearing, the court annulled appellant’s determinations — including those regarding the semen bank and insemination facility licenses, which the Appellate Division did not otherwise address. We granted leave to appeal, and now reverse.
II.
Although amended Public Health Law § 574 did not explicitly confer State licenses on existing City licensees, respondents urge that when the State stepped into the City’s role they were, in effect, "grandfathered” into State licenses.[1] Thus, in their view, appellant’s denial of licenses was tantamount to revocation, which as a matter of law requires a hearing (see, Public Health Law § 577 [3]). The notion that appellant’s action constituted a revocation was central to the Appellate Division decision, as it is to respondents’ argument before us.
The July 1, 1994 amendment of Public Health Law § 574, removing clinical laboratories and blood banks from City regulation and placing them exclusively within appellant’s authority, had several purposes. To be sure, one purpose was — as respondents emphasize — to ease the regulatory burden on license applicants and avoid duplicative and inconsistent regulations (Mem of Legislative Representative of City of New York, Bill Jacket, L 1993, ch 436, at 27-28 [reprinted in 1993 McKinney’s Session Laws of NY, at 2619-2620]). But the amendment served other important purposes as well, among them more closely monitoring the qualifications of such facilities and making the requirements for certification more stringent, to comply with Federal law (id. ["enforcement of applicable laws and regulations against non-compliant laboratories and blood banks will be enhanced when, as envisioned by this legislation, (the) State, with its larger and more extensive investigative and legal resources, takes over the City’s program”]; Letter of Senator Michael J. Tully, Jr., in support, Bill Jacket, L 1993, ch 436; Mem of Senator Michael J. Tully, Jr., in support of L 1993, ch 436, 1993 NY Legis Ann, at 315-316).
As made clear in Public Health Law § 570:
*97 "[i]t is the purpose of this title to promote the public health, safety and welfare by requiring the licensure of clinical laboratories and blood banks, by establishing minimum qualifications for directors, and by requiring that the performance of all procedures employed by clinical laboratories and blood banks meet minimum standards accepted and approved by the department.”
Thus, neither the explicit language of the amendment nor the legislative intent to closely monitor these medical facilities supports respondents’ contention that City licensees automatically gained State licenses.
Indeed, reading Public Health Law § 574 together with the other sections of the Public Health Law governing State licensing confirms the opposite conclusion. Public Health Law § 575 (2) states that appellant shall not issue a permit for a blood bank or clinical laboratory
"unless a valid certificate of qualification in the category of procedures for which the permit is sought has been issued to the director pursuant to the provisions of section five hundred seventy-three of this title, and unless the department finds that the clinical laboratory or blood bank is competently staffed and properly equipped, and will be operated in the manner required by this title” (id.).
Were respondents’ view followed, those requirements would have to be ignored, as would the requirements of annual renewal (Public Health Law § 575 [4]) and the automatic voiding of a license should there be a change in director, location or ownership of the laboratory (Public Health Law § 575 [6]).
Reading the amendment as respondents urge would lead to another result the Legislature could not have intended: entities previously licensed by the City would be licensed Statewide with no review by appellant. Especially considering respondents’ prior unsuccessful attempts to obtain State licensing, "grandfathering” them would provide an unwarranted windfall.
 We therefore conclude that respondents were not automatically licensed by the State. They were at best seeking renewals of their licenses to operate their clinical laboratories *98 and blood bank,[2] and were initial applicants for insemination facility and semen bank licenses. While existing licenses cannot be revoked without a hearing, there is no similar right for initial applications or renewals of licenses (see, Public Health Law § 577 [3]; Matter of Richard I v Ambach, 90 AD2d 127, affd for reasons stated below 61 NY2d 784, cert denied 469 US 822; Matter of 125 Bar Corp. v State Liq. Auth., 24 NY2d 174, 178-180; Matter of Fink v Cole, 1 NY2d 48, 51-52).
III.
 Respondents alternatively claim the right to a hearing based on a property interest derived from years of continuous operation under the City’s licensing scheme and provisional State licenses. Again, their contentions lack merit.
As explained in Board of Regents v Roth (408 US 564):
"To have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it. * * *
"Property interests, of course, are not created by the Constitution. Rather, they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law — rules or understandings that secure certain benefits and that support claims of entitlement to those benefits” (id., at 577).
In considering whether a legitimate claim of entitlement, or right, is granted by State law, "the focus is on the relevant statute, regulation, or contract establishing eligibility for the benefit at issue” (Matter of Medicon Diagnostic Labs. v Perales, 74 NY2d 539, 545). Thus, the focus of respondents’ claimed property interest must be on the laws from which the licenses derive.
As has been noted in other contexts, what is central to this analysis is whether the law accords discretion to the authority: property interests do not arise in benefits that are wholly discretionary (see, e.g., Matter of Doe v Coughlin, 71 NY2d 48, 55 [prisoners had no liberty interest in conjugal visit program *99 where 15 discretionary factors were consulted before allowing a visit]; Yale Auto Parts v Johnson, 758 F2d 54, 59 [2d Cir] [no entitlement to location approval certificate for junkyard where Department of Motor Vehicles retained discretion to deny]; RRI Realty Corp. v Incorporated Vil. of Southampton, 870 F2d 911 [2d Cir], cert denied 493 US 893 [no entitlement to building permit because of authority’s wide discretion]).
While the "theoretical possibility of discretionary action does not automatically classify an application for a license or a certificate as a mere 'unilateral, hope or expectation’ ” (Sullivan v Town of Salem, 805 F2d 81, 85 [2d Cir]), here we do not need to consider precisely how much discretion defeats an entitlement because it is clear that the law vests appellant with considerable discretion in licensing medical sites like respondents’.
Indeed, only those blood banks and clinical laboratories appellant determines to be "competently staffed and properly equipped,” and "operated in the manner required by [the Public Health Laws]” (Public Health Law § 575 [2]) may receive licenses. Moreover, Public Health Law § 575 (2) also requires that appellant have awarded a valid certificate of qualification (see, Public Health Law § 573) to the director of the clinical laboratory or blood bank. Such certificates issue only to a person who "possesses the character, competence, training and ability to administer properly the technical and scientific operation of a clinical laboratory or blood bank, including supervision of procedures and reporting of findings of tests” (Public Health Law § 573 [2]).
Similarly, licenses for an insemination facility and semen bank issue only when appellant finds that "the premises, equipment, personnel, rules and by-laws, and standards of service are fit and adequate and that the bank or storage facility will be operated in the manner required by this article” (Public Health Law § 4364 [3]). Among the factors that appellant is to consider before approving a license is the "character and competence of the operator, its officers, directors, principal stockholders and controlling persons, including the quality of care provided through any health care entities operated or controlled by such persons” (Public Health Law § 4364 [4] [f])— again plainly discretionary determinations.
Respondents’ provisional licenses also did not give rise to a property right. Provisional licenses are temporary and expire a period of time after a denial of the application for a permanent *100 license (10 NYCRR 52-2.2 [a]). Further, they may be revoked, at any time without a hearing if appellant finds that the facility is not operated in substantial compliance with the provisions of 10 NYCRR 52-2.5 (see, 10 NYCRR 52-2.2 [e]).
To be contrasted against these laws are instances where the administrative body was without discretion to deny an application and thus the applicant had an entitlement to the license sought. In Walz v Town of Smithtown (46 F3d 162, 168 [2d Cir], cert denied 515 US 1131), for example, the court examined the authority of the Superintendent of Highways to deny an excavation permit and noted that upon the applicants providing certain information on the appropriate form, the permit "shall be issued in the name of the Superintendent of Highways of the Town of Smithtown.” Because the Superintendent was without discretion to refuse to issue a permit, the court held that the applicants had a property right in the permit. Nor is this case like Sullivan v Town of Salem (805 F2d 81, supra), where the licensing authority denied a license based on a requirement not contained within its enabling statute, rather than one as to which it had discretion. Here, appellant indisputably relied on discretionary grounds within its statutory authority.
Thus, respondents had no property interest entitling them to a due process hearing.[3]
IV.
Respondents are, of course, entitled to administrative review that is not arbitrary, capricious or tainted by bias. They have not shown they were denied that.
Although the record demonstrates that respondents have not complied with the applicable laws and regulations in the past, they urge that any violations have been rectified; that certain violations were only minimal and technical in nature; that the violations applied only to the clinical laboratories and should not affect the status of the other applications; and that based on a recent inspection conducted by an independent Judge-appointed party for a related litigation, respondents’ facilities were deemed not only safe but also superior to other facilities. Thus, argue respondents, appellant’s denial of the applications was arbitrary and capricious.
*101 These arguments miss the mark. The issue here is not whether respondents corrected any earlier deficiencies, or how well their facilities function now. Appellant denied the applications because respondents "do not have the character and competence to ensure that the [medical sites] are operated in accordance with the law, and will be so operated” (see, Public Health Law § 573 [2]; § 575 [2]; § 4364 [4] [f]; 10 NYCRR 52-2.5), a determination that is entitled to deference (see, Matter of Medical Malpractice Ins. Assn. v Superintendent of Ins., 72 NY2d 753, 763, cert denied 490 US 1080 ["It is axiomatic that a court reviewing the determination of an agency may not substitute its judgment for that of the agency and must confine itself to resolving whether the determination was rationally based.”]). Given the record with respect to the clinical laboratories, and Dr. Feldschuh’s central role in all the facilities, we cannot say that appellant acted arbitrarily or capriciously in denying the licenses.
Finally, while respondents describe an elaborate regulatory conspiracy against them, they rely on allegations lacking the requisite factual support (see, Matter of Warder v Board of Regents, 53 NY2d 186, 197, cert denied 454 US 1125 ["(A) mere allegation of bias will not suffice. There must be a factual demonstration to support the allegation of bias.”]). And in any event, as the record reveals independent reasons that fully support appellant’s determination, respondents have failed to show that alleged bias was the cause of the denial (id., at 197 [there must be proof that the challenged regulatory "outcome flowed from (bias)”]).
Respondents’ remaining arguments are without merit.
Accordingly, the order of the Appellate Division should be reversed, with costs, and the petition dismissed.
Judges Titone, Bellacosa, Smith, Levine, Ciparick and Wesley concur.
Order reversed, etc.

. This argument applies only to the blood bank and clinical laboratories. Respondents’ insemination facility and semen bank were at all relevant times regulated by appellant, not by the City Department of Health.

. Indeed, even if the Public Health Law had not been amended, respondents would have had to seek renewal of their City licenses, which expired June 30, 1994.

. We note that even if a property interest were found, that would not necessarily entitle respondents to a hearing (see, Mathews v Eldridge, 424 US 319, 335 [establishing four-factor balancing test to determine the amount of process due to an individual with a protected interest]).