DeCostello Carting, Inc. v Maldonado (2004 NY Slip Op 50239(U))

[*1]

DeCostello Carting, Inc. v Maldonado

2004 NY Slip Op 50239(U)

Decided on March 22, 2004

Supreme Court, Kings County,

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and will not be published in the printed Official Reports.

Decided on March 22, 2004

Supreme Court, Kings County,
 DeCostello Carting, Inc., Petitioner, - -
against
Jose Maldonado, as Chairman of the City of New York Business Integrity Commission and The City of New York Business Integrity Commission, Respondents.
Index No. 34384/02

The petitioner was represented by: Giaiamo & Vreeburg, P.C., 80-02 Kew Gardens Road, Kew Gardens, N.Y. 11415
The defendant was represented by: Michael A. Cardozo, Corporation Counsel, 100 Church Street (Admin. Law Div.), New York, N.Y. 10007

MARK I. PARTNOW, J.
Petitioner DeCostello Carting, Inc. (DeCostello Carting) moves for a judgment, pursuant to CPLR Article 78, vacating and annulling the August 15, 2002 decision of respondents City of New York Business Integrity Commission (the Commission) and Commission Chairman Jose Maldonado (Maldonado) which denied its application for a license to operate a trade waste business and for a judgment directing respondents to issue such license to petitioner.
A show cause order signed by Hon. Larry D. Martin, dated August 28, 2002, granted petitioner's application for a temporary restraining order and preliminary injunction, pursuant to CPLR 6301, pending a hearing on the underlying petition. That order enjoined and restrained respondents from terminating petitioner's current New York City Department of Consumer Affairs (DCA) license to operate its trade waste removal business and, thus, allowed petitioner to continue to service its customers pursuant to such license.[FN1]
Respondents timely answered and served a Demand To Change Venue. They have now separately and preliminarily moved, pursuant to CPLR 506 (b) and 511 (b), to change the place of trial from Kings County to New York County.
This case stems from the denial of petitioner's August 1996 application to operate a trade waste business in New York City. That application, filed on August 28, 1996, sought a license under a new regulatory framework.[FN2] That framework retired petitioner's previously issued DCA [*2]license and only allowed its use until the outcome of the new license application.[FN3]
The Commission, operating from its New York County offices, conducted an investigation of petitioner and its principal, Frank DeCostello, Sr. This investigation involved a review of confidential information obtained from the New York County District Attorney's Office, including a search warrant affidavit, and the deposition of both Frank DeCostello, Sr. and his son, Frank DeCostello, Jr., whom petitioner employed as a driver/repair man.
The Commission's executive staff, which also processed other voluminous applications,[FN4] thereafter drafted a recommendation to the Commissioner, dated June 7, 2002, which denied petitioner's license application. Petitioner's counsel, who received the recommendation, subsequently submitted an affidavit from Frank DeCostello, Sr. and several exhibits in response to and in support of the application. After reviewing petitioner's response to the recommendation, the Commission issued its decision, dated August 15, 2002, which denied the application. This Article 78 proceeding ensued.
Respondents' Position
Respondents contend that New York County is the proper venue for this proceeding under CPLR 506 (b).[FN5] They argue that the determination under review and all relevant proceedings occurred in New York County, that the material events, which they define as "respondents' actions in denying petitioner's application for a trade waste license," took place in New York County and that the Commission's principal office is located in New York County.
[*3]Petitioner's Position
Petitioner counters that the material events alleged against it occurred in Kings County. These events include the numerous illegal acts allegedly committed by Raymond Ramos, petitioner's former employee, and by Frank DeCostello, Sr., all of which acts occurred in Brooklyn.
Discussion
CPLR 7804(b)[FN6] specifically incorporates by reference the venue provisions of CPLR 506 (b) which provides three alternative bases for venue: (1) where the challenged action occurred, (2) where the material events took place or (3) where respondent's principal office is located. Each side validly presents at least one ground for the proper venue in this proceeding. However, case law favors the county where the material events occurred when the location of the challenged action or the site of a respondent's principal place of business would also serve as legitimate venue options (see 14 Weinstein-Korn-Miller, NY Civ Prac ¶ 7804.04).
Indeed, the Appellate Division, First Department, on its own motion and with the Second Department's concurrence in Lacqua v O'Connell (280 App Div 31, 32) ordered a proceeding against the State Liquor Authority transferred to Kings County, the county of the affected premises and the place where the events that gave rise to the proceeding took place.

While under section 1287of the Civil Practice Act [the predecessor to CPLR 506(b)] such a proceeding might be brought either in the county of New York, where the determination complained of was made, or in the county of Kings where the material facts took place, or in the county of Albany where the principal office of the respondent is located, it is the view of the Justices of the Appellate Divisions of both the First and Second Departments that such a proceeding can best be heard and determined where the material facts took place, that is in the judicial district embracing the county in which the premises are located.
Subsequent case law has construed the Lacqua decision as "generally applicable to Article 78 proceedings and . . . not limited to proceedings against the State Liquor Authority" (Anderson v Board of Educ., 19 Misc 2d 873, 875). Specifically, courts have applied Lacqua to proceedings against the New York State Civil Service Commission (Manzi v Kaplan, 33 Misc 2d 62, 63) a Board of Education (Anderson, 19 Misc 2d at 874), a rent commission (Matter of Caro v Weaver, 15 Misc 2d 558, 558-559) and a department of public works (McDermott v Johnson, 1 Misc 2d 55, 57, 59).
In fact, it was held, in Caparco v Kaplan (36 Misc 2d 653, 657), that Lacqua applied equally to proceedings against the State Civil Service Commission, the court noting that "the words 'material facts' mean the underlying events which gave rise to the official act complained of' (Zorach v Clauson, Sup., 86 NYS 17, 27, affd 275 App Div 774, affd 300 NY2d 613; Matter of Bd. of Educ. of City of Beacon v State Dept. of Educ., 275 App Div 1041; Matter of McDermott v Johnson, 1 Misc 2d 55, 57 supra; Brown v Bates, Sup., 102 NYS 859, 860)."
Respondents therefore err in failing to distinguish the place where the challenged action occurred, New York County, from the county in which the material events (i.e., the underlying facts) took place; namely, Kings County. Their interpretation would make the term "material events," as used in the venue provisions, superfluous. Accepting this approach "would be to define 'material events' as if they were the same as respondents' 'determinations' and thus deprive petitioners of the alternative basis for venue which the legislature clearly intended to provide" (Knight v State Dept. [*4]of Environmental Conservation, 110 Misc 2d 196, 204).
The material events in this case concern the alleged nefarious acts in Kings County that provided the underlying basis for respondents' challenged determination. Consequently, the motion by respondents for an order changing the place of trial is denied. Accordingly, petitioner's application may be considered on its merits.

The Article 78 Application
Petitioner's Position
Petitioner argues that the decision to deny its application for a trade waste removal license violated its right to a due process evidentiary hearing under both federal and state constitutional provisions. In addition, it claims that respondents violated lawful procedure and issued a decision variously characterized in the language of CPLR 7803 (3) and (4) as "arbitrary and capricious," "an abuse of discretion," "not supported by substantial evidence" and "not made as a result of a hearing held at which evidence was taken pursuant to direction of law." 
More specifically, petitioner contends that respondents improperly relied on "a double hearsay affidavit from a detective who said that he read a 'proffer' made by . . . convicted felon Raymond Ramos." That proffer implicated petitioner's principal, Frank DeCostello, Sr., in a variety of illegal acts and petitioner contends that respondents were required to produce Raymond Ramos (Ramos) at an evidentiary hearing for cross examination. Petitioner also faults respondents for failing to provide a copy of the detective's affidavit until after the Commission staff issued its recommendation and for failing to grant its request to recall Frank DeCostello, Sr. for a fifth deposition.[FN7] Thus, petitioner seeks a de novo hearing before the court.
Respondents' Position
Respondents assert that the decision denying petitioner's application was proper, that sufficient evidence existed to support the determination and that petitioner's due process rights were not violated. Respondents stress the Commissions's findings that Frank DeCostello, Sr. engaged in numerous racketeering and other illegal acts, including the hiring of Ramos, a convicted criminal, to intimidate, extort and physically harm others, including competitors, and that he failed to provide truthful information to the Commission regarding his relationship with Ramos and DeCostello Carting's participation in the organized crime-controlled WPA [i.e., the Greater New York Waste Paper Association]. Such findings caused the Commission to conclude that petitioner lacks the requisite good character, honesty and integrity to obtain a trade waste removal licence.
Respondents observe that the decision reflected that the Commission reviewed a proffer, i.e., an offer of information to qualify for a plea bargain, made by Ramos to the New York County District Attorney's Office. That proffer, they claim, described several incidents where petitioner collaborated with Ramos in racketeering and criminal activity. Such incidents allegedly included an offer to Ramos of $1500 to assault someone whom he seriously injured with a kitchen knife; utilizing Ramos to slap a flower shop owner and collect money from him; directing Ramos to "beat up" some youths harassing a customer; using Ramos to warn a competitor to stay away from certain Brooklyn customers; receiving customers that Ramos "poached" from another carter; giving Ramos a badge issued by the Department of Sanitation; and setting up a meeting where two men offered Ramos $20,000 to kill someone.
The Commission's decision, respondents observe, categorized the proffer as "confidential material" and an accompanying affidavit from Detective Andrew Vallas of the New York City Police Department explained that "[t]he DA provided the Ramos Proffers to the Commission to assist the Commission in conducting investigations and issuing determinations with the understanding that the [*5]Commission would not make public the document, including as part of the record for the DeCostello license application." This affidavit, furnished to petitioner's counsel upon his request after the Commission staff issued its 21-page recommendation on June 7, 2002, stated that the recommendation is consistent with Ramos' proffers in October 1995.
Respondents also refer to the decision's reliance on Frank DeCostello Sr.'s own deposition testimony. That testimony, the decision notes, acknowledged a close relationship with Ramos, including the hiring of him to do work for DeCostello Carting, and differed with the proffers only concerning Ramos' criminality. The decision stresses that "Frank's testimony confirmed that he had [a] relationship with the cartel criminals described by Ramos . . . [and] was consistent with regard to the context, i.e., the time and place, for criminal acts described by Ramos, including the stabbing incident." The decision found Ramos' proffers "especially persuasive in light of the conviction of the WPA, of which DeCostello was a member, and the convictions of many individuals named by Ramos, including Frank's business and social acquaintances."
Respondents further emphasize that the testimony of both Frank DeCostello, Sr. and his son provided an independent basis for the decision. They mention the decision's separate finding that Frank DeCostello, Sr. provided false testimony about both Ramos and the applicant's participation in the WPA, an enforcer of the illegal customer allocation system. They also mention that the decision found Frank DeCostello, Jr.'s credibility "equally low," especially in his profession of a lack of knowledge of the illegal cartel, despite having worked with his father in the industry.
Discussion
Examining the Evidence and the Applicable Statute
Administrative Code § 16-509 (a) permits respondents to refuse to grant a carting license where, after giving an applicant "notice and an opportunity to be heard," it determines that such applicant "lacks good character, honesty and integrity." Here, the evidence indicates that petitioner lacked the requisite good character. Petitioner's dues-paying membership from 1991 through 1995 in the now defunct Greater New York Waste Paper Association (WPA),[FN8] which was convicted in 1997 of cartel-related crimes,[FN9] its participation in an illegal customer allocation or property rights' system and the discredited testimony of its principal, Frank DeCostello, Sr., given in investigative depositions regarding petitioner's participation in the WPA, provide a basis for respondents' denial of the license application. In addition, respondents' reliance on Ramos' proffer detailing his collaboration with Frank DeCostello, Sr. in racketeering and other criminal activity further supports the license denial.
The Appellate Division, First Department upheld a determination similarly denying waste carting licenses in Hollywood Carting Corp. v City of New York (288 AD2d 71) where the evidence included a confidential informant's affidavit. That court explained that "[a]lthough the statement of an anonymous informant set forth in one of the affidavits submitted by the Commission was not the only evidence of petitioners' participation in the cartel, we note that such hearsay may be competent to support the type of administrative determination challenged here [citation omitted]" (Hollywood Carting Corp., 288 AD2d at 72).
The Appellate Division, Second Department has likewise recognized this principle, as noted in its February 17, 2004 decision in Matter of BiCounty Brokerage South Corp. v State of New York Insurance Department ( AD2d , 2004 NY Slip Op 01021): "It is well settled that hearsay is admissible at an administrative hearing and 'hearsay alone may constitute substantial evidence' (Matter of Bullock v State of New York Dept. of Social Servs., 248 AD2d 380, 382; see Matter of [*6]Gray v Adduci, 73 NY2d 741; Matter of Nieto v DeBuono, 231 AD2d 573)" (id. at *2).
Consequently, the Commission could utilize the proffers from Ramos, an identifiable source, and the affidavit of Detective Andrew Vallas, who read the proffers, compare it with statements in the recommendation to the Commission and confirm that the recommendation accurately restated the pertinent facts in the proffers. Such information validly established the Ramos-DeCostello relationship which Frank DeCostello, Sr. himself acknowledged and provided additional support for respondents' decision.
 Administrative Code § 16-509 (a), in fact, identifies several factors that the Commission may consider in assessing a license application, including "association with any member or associate of an organized crime group as identified by a federal, state or city law enforcement or investigative agency when the applicant knew or should have known of the organized crime associations of such person" (Administrative Code § 16-509 [a] [vi]). Therefore, Frank DeCostello Sr.'s own testimony was a factor that could be (and was) considered by the Commission, as was his admittedly evasive testimony [FN10] which constituted a "failure by such applicant to provide truthful information in connection with the application" (Administrative Code § 16-509 [a] [i]).
Recent case law has shown that evidence establishing such failings means that a rational basis exists for the challenged determination. The Appellate Division, First Department's decision in DeCostole Carting, Inc. v Business Integrity Commission of the City of New York (2 AD3d 225), which upheld another license denial, cited some of the same considerations present in this case. There too, "by participating in the mob-controlled waste cartel's property rights system [and] failing to provide truthful information to the Commission . . . petitioner did not possess the requisite 'character, honesty and integrity' for licensure [and the Commission's decision] was not arbitrary and capricious (see Administrative Code of the City of NY § 16-509(a); Tocci Bros., Inc. v Trade Waste Commn. of the City of New York, 251 AD2d 160, lv denied 92 NY2d 812; Hollywood Carting Corp. v City of New York, supra [288 AD2d 71])" (id.). 
That court had previously highlighted similar circumstances in upholding a Commission decision barring a petitioner from serving as a principal or employee in the waste hauling industry (Sindone v City of New York, 2 AD3d 125, 2003 NY Slip Op 19023 *1 ["petitioner gave misleading or untruthful information in connection with, inter alia, his former membership in an indicted trade association . . . petitioner was a member of a trade association indicted for antitrust violations, and . . . had been a principal in a trade waste business that did business with a known organized crime figure"]). Consequently, the Commission herein acted rationally.[FN11]
Assessing the Applicable Administrative Procedure
In addition, the Commission followed its own lawful procedure. 17 RCNY § 2-08 (a), which implements the "notice and opportunity to be heard" mandates of Administrative Code § 16-509 (a), procedurally requires that applicants receive written notification of the reasons for a refusal to grant a license application and that they be given 10 business days thereafter to respond in writing with reasons why a denial should not occur.[FN12] The Commission, after
 considering the applicant's response, may then either issue its final determination or, in its discretion, afford the applicant a further opportunity to be heard (id.).[FN13]
Here, hand delivery of the June 7, 2002 recommendation, which contained a 10-day notice to make a submission, occurred at petitioner's place of business. Petitioner's then newly-retained counsel requested, by letter dated June 13, 2002, copies of all non-public documents that the Commission staff had utilized in making its recommendation and sought further depositions of petitioner's principals. Counsel also asked for a three-week extension beyond the 10-day period to respond and received permission for a two-week delay until June 28, 2002. A messenger for petitioner's counsel retrieved copies of all deposition transcripts on June 19, 2002 from the Commission's offices, together with a copy of the tape recording of the April 29, 1997 deposition [FN14] and some other documents used by the Commission staff. The materials which were provided also included Detective Vallas' affidavit regarding the Ramos proffers.
Petitioner's counsel informed the Commission staff, by letter dated June 24, 2002, about missing pages in the transcript of one of the depositions and requested copies thereof. He also submitted Frank DeCostello Sr.'s July 10, 2002 affidavit as a partial response to the Commission's recommendation. Counsel for petitioner also requested and received two further extensions of time in which to respond to the recommendation. These extensions lengthened the original 10-day deadline for a response to August 9, 2002, more than two months after issuance of the recommendation.
A Commission staff attorney telephoned petitioner's counsel on August 7, 2002 to inquire whether a further response was to be expected. The Commission attorney then learned that, notwithstanding the letter of June 24, 2002, petitioner's attorney had still not received the missing pages of transcript. Those pages were sent by fax to petitioner's counsel that morning.
On August 8, 2002, petitioner's attorney faxed a third request for an extension of the time to respond to the recommendation, but the Commission staff attorney by letter denied any extension beyond the August 9, 2002 deadline.[FN15]
[*7]
This procedural review shows that the decision, dated August 15, 2003, occurred only after the Commission followed its own administrative provisions. Petitioner received written notice of the reasons for the Commission's actions, as well as an extended opportunity to submit its own reasons why the Commission should not deny petitioner's license application. Petitioner's silence for six weeks after the initial notification of the missing transcript pages strongly suggests the lack of a basis for any meaningful further response.[FN16] The comprehensive nature of Frank DeCostello Sr.'s 26-page, 62- paragraph affidavit, submitted July 12, 2003, both in response to the recommendation and in support of the license application reinforces this assessment.
Considering Constitutional Concerns
Relevant case law also negates petitioner's constitutional and due process arguments. The DeCostole Carting decision succinctly declared in this regard that: "[t]he discretionary refusal to grant the license was within the Commission's statutory authority and petitioner had no property interest in licensure or a due process right to a hearing in connection therewith (see Matter of Daxor Corp. v State of New York Dept. of Health, 90 NY2d 89; Matter of Hollywood Carting Corp. v City of New York, 288 AD2d 71; Sanitation & Recycling Industry, Inc. v City of New York, 107 F3d 985)" (DeCostole Carting, Inc., 2003 NY Slip Op 19415 at *1; see also Sindone, 2003 NY Slip Op at *1: "Petitioner had no property right in being employed as a principal with a licensed carter; respondent Commission's broad discretion to grant, deny or revoke a carter's license, is preclusive of any claim of entitlement by petitioner to employment within New York City trade waste industry [citations omitted]).[FN17]
The absence of a property interest and due process right and the use of the arbitrary and capricious standard of review means that this case and the other Commission decisions discussed above involve administrative action reviewable under CPLR 7803 (3),[FN18] not determinations from a quasi-judicial evidentiary hearing which trigger the substantial evidence standard under CPLR 7803 (4).[FN19] Neither do they involve transfers otherwise mandated by CPLR 7804 (g) when the substantial [*8]evidence issue would apply [FN20] (id.; Sindone, 2003 NY Slip Op at *1; Hollywood Carting Corp., 288 AD2d at 71; Tocci Brothers, Inc. v Trade Waste Commission of the City of New York, 251 AD2d 160, 160).
In addition, because a property interest is absent, even dissemination of respondents' written decision would fail to establish a deprivation of due process (Scarpati-Reilly v Town of Huntington Board of Ethics and Financial Disclosure, 300 AD2d 404, 405). Here, petitioner has failed to even allege that respondents publicly disseminated the reasons for the license denial, which thus moots its argument regarding a denial of due process (Cardo v Murphy, 104 AD2d 884, 885). Accordingly, respondents' motion to change venue and petitioner's application to vacate and annul respondents' decision herein and to direct respondents to issue him a license are denied.
The foregoing constitutes the decision, order and judgment of this court.
 E N T E R,
J. S. C.
Decision Date: March 22, 2004
Footnotes

Footnote 1:Such relief has rendered moot the petitioner's third cause of action for money damages based upon petitioner's failure to gain the requested restraints. Respondents, in any event, enjoy absolute immunity from damages for the discretionary action taken herein (Haddock v City of New York, 75 NY2d 478, 484).

Footnote 2:Petitioner's application resulted from the impact of Local Law 42 of 1996. That law, codified as Title 16-A of the New York City Administrative Code, created the New York City Trade Waste Commission consisting of the Commissioners of the Department of Consumer Affairs (which previously regulated the carting industry), the Departments of Sanitation, Business Services, and Investigation and a mayorally-appointed Chairperson. NYC Admin Code § 16-502.
The Organized Crime Control Commission, created pursuant to a charter revision provision approved by voters in November 2001, took over the Trade Waste Commission, the Gambling Control Commission and other agencies or units regulating the food, transportation and shipping industries. Local Law 21 of 2002, effective July 29, 2002, changed the name of the Organized Crime Control Commission to the Business Integrity Commission. Administrative Code § 16-503 makes the Commission "responsible for the licensing, registration and regulation of businesses that remove, collect or dispose of trade waste . . ." 

Footnote 3:Local Law 42, § 14 (iii) (a) allowed any DCA licensed carter to continue operating pending the Commission's determination of its new license application, provided that such DCA licensee submitted its new license application to the Commission by August 30, 1996. Petitioner's license application filing on August 28, 1996 thus perpetuated its operations. 

Footnote 4:"Local Law 42 render[ed] all existing carting contracts terminable on 30 days' notice by either customer or carter, unless the carter obtain[ed] a new license from the Commission, or applie[d] for and receive[d] a waiver of the 30-day termination clause, upon a showing that a waiver 'would not be inconsistent with the purposes of this act'"(D & D Carting Co., Inc. v City of New York, 172 Misc2d 544, 545-546). Respondents' counsel has explained that the need to process about 200 applications from formerly licensed trade waste haulers for waivers of the 30-day contract termination provision involved in-depth character and fitness reviews of the companies and their principals. Such processing, according to respondents' counsel, took several years and, in turn, delayed the Commission's review of the approximately 1,600 license and registration applications filed under the new law. 

Footnote 5:That subsection provides, in part, that: "[a] proceeding against a body or officer shall be commenced in any county within the judicial district where the respondent made the determination complained of . . . or where the proceedings were brought or taken in the course of which the matter sought to be restrained originated, or where the material events otherwise took place, or where the principal office of the respondent is located . . ." 

Footnote 6:CPLR 7804 (b) provides, in part, that: "[a] proceeding under this article shall be brought in the supreme court in the county specified in subdivision (b) of section 506 . . ."

Footnote 7:The Commission deposed Frank DeCostello, Sr. on April 29, 1997, August 20, 1997, October 10, 1997 and August 30, 2000 and deposed his son, Frank DeCostello, Jr., on August 31, 2000.

Footnote 8:Petitioner contributed $18,000 to the WPA during this period, according to respondents' decision (p 17, penultimate paragraph). 

Footnote 9:The WPA pleaded guilty in the summer of 1997 to criminal restraint of trade, according to respondents' decision (p 5, penultimate paragraph).

Footnote 10:"Frank DeCostello, Sr. concedes in his affidavit that 'my testimony before the Commission was largely rambling, non-responsive and unintelligible because I did not directly answer the questions'" ( Respondents' decision, p 10, second paragraph). 

Footnote 11:The findings that there was sufficient probative evidence to support a rational basis for respondents' determination equally moots petitioner's request for the court to conduct a de novo evidentiary hearing or to substitute its own judgment for that of respondent.

Footnote 12:That rule provides that: "[w]here the Staff of the Commission proposes that the Commission refuse, pursuant to § 16-509 . . . of the Code . . . to issue a license to remove, collect, or dispose of trade waste . . . the applicant shall be notified in writing of the reasons for the proposed refusal of such license . . . and that the applicant may, within ten (10) business days of the date of such notification, respond in writing to the Commission setting forth the reasons such applicant believes that it should not be denied such license . . ." 

Footnote 13:17 RCNY §2-08 (a) pertinently provides in this regard that: "[i]n the exercise of its discretion, the Commission, considering the reasons for the proposed refusal to issue the license . . . the nature of the issues raised in connection therewith, and the response submitted by the applicant, may make a final determination regarding the issuance of such license . . . or through the Chair or his or her designee, afford the applicant a further opportunity to be heard in such proceeding as is deemed appropriate." 

Footnote 14:No transcript of the April 29, 1997 tape then existed. However, respondents have now provided both this court and petitioner with a transcript of this tape recording as part of the responsive papers herein. Petitioner's counsel had the opportunity, in any event, to listen to the recording beginning on June 19, 2002, when he received the recording, before making a submission to the Commission.

Footnote 15:That letter pertinently remarked that: "it came to my attention only yesterday, on August 7th [2003], that you still had not received the missing transcript pages. And I only learned of this because I made a courtesy call to your office. I had not yet received a supplemental response and I wanted to confirm that you did not intend to submit one. When I learned you still did not have the approximately 60 missing pages, I faxed them to your office shortly thereafter. While the staff should have sent these materials to you much sooner, obviously your continuing silence contributed to the staff's failure to apprehend the oversight." 

Footnote 16:Petitioner's application herein also fails to make any substantive point, not previously brought to the Commission's attention, regarding the delayed receipt of those pages.

Footnote 17:The denial of an application to waive the 30-day termination requirement in Local Law 42 does not constitute a deprivation of a property right of petitioner (Vigliotti Bros. Carting Co. v The Trade Waste Commission of the City of New York, NYLJ, December 24, 1996 at 26, col 5). In addition, the fact that respondents reached "a determination on written submissions, rather than an evidentiary hearing was sufficient to satisfy due process requirements." (id).

Footnote 18:That provision pertinently provides that: "[t]he only questions that may be raised in a proceeding under this article are: 3. whether a determination was made in violation of lawful procedure, was affected by an error of law or was arbitrary and capricious or an abuse of discretion, including abuse of discretion as to the measure or mode of penalty or discipline imposed . . ."

Footnote 19:That provision provides that: "[t]he only questions that may be raised in a proceeding under this article are: 4. [w]hether a determination made as a result of a hearing held, and at which evidence was taken, pursuant to direction by law, is on the entire record, supported by substantial evidence."

Footnote 20:That provision pertinently provides that: "[w]here the substantial evidence issue specified in question four of section 7803 . . . is raised . . . the court shall make an order directing that [the proceeding] be transferred for disposition to a term of the appellate division held within the judicial department embracing the county in which the proceeding was commenced."