[913 NYS2d 53]

TESTWELL, INC., Doing Business as TESTWELL LABORATORIES, INC., Respondent, v NEW YORK CITY DEPARTMENT OF BUILDINGS et al., Appellants.

First Department, December 7, 2010

**APPEARANCES OF COUNSEL**

*Michael A. Cardozo, Corporation Counsel*, New York City (*Cheryl Payer, Stephen J. McGrath* and *Teresita V. Magsino* of counsel), for appellants.

*Tarter Krinsky & Drogin, LLP*, New York City (*David J. Pfeffer* of counsel), for respondent.

**OPINION OF THE COURT**

ANDRIAS, J.P.

At issue in this CPLR article 78 proceeding is the propriety of the determination of respondent New York City Department of Buildings (the Department), which denied renewal of petitioner's, Testwell, Inc., doing business as Testwell Laboratories, Inc., concrete testing laboratory license. Because we conclude that Testwell was afforded the reasonable notice and op-

portunity to be heard to which it was entitled under Administrative Code of the City of New York § 28-401.12, and that the denial of renewal was rationally based and not arbitrary or capricious, the Department's determination should have been confirmed.

Testwell provides inspection, testing, and quality control services for the construction industry. Since 1994, it has held a concrete testing laboratory license issued by the Department.

By indictment filed in New York County and dated October 29, 2008, Testwell, its sole shareholder Vidyasagar Reddy Kancharla, and certain Testwell employees were charged with enterprise corruption, scheme to defraud, grand larceny, attempted grand larceny, offering a false instrument for filing, and falsifying business records. The indictment, to which all defendants pleaded not guilty, was based, among other things, on allegations that Testwell prepared and offered false mix design reports to both public and private entities.[1]

Based on the indictment, by letter dated October 30, 2008, the Department, pending a hearing, suspended Testwell's license and Kancharla's site-safety manager license and his professional certification and filing privileges. In a report and recommendation dated December 2, 2008, an Administrative Law Judge found that while the prehearing suspension of the licenses and Kancharla's professional certification privileges were proper, the indictment was insufficient evidence to support further suspensions and Testwell was deprived of due process. By decision and order dated January 20, 2009, the Department's Commissioner rejected that finding and reinstated, pending resolution of the criminal charges, the suspension of the licenses and Kancharla's professional certification privileges.

Testwell commenced an article 78 proceeding challenging the Commissioner's determination. By order and judgment entered on or about March 12, 2009 (2009 NY Slip Op 30637[U]), Supreme Court (Martin Shulman, J.) granted the petition on the grounds that no regulatory or statutory authority empowered the Department to suspend the license based on the indictment alone, which did not suffice to satisfy the Department's burden at the hearing of establishing Testwell's alleged misconduct by a preponderance of the evidence.

---

**1.** Testwell, Kancharla and Victor Barrone (a Testwell employee) were later convicted of enterprise corruption and related counts and have appealed to this Court.

Meanwhile, Testwell moved to dismiss the indictment. In its memorandum of law in support, Testwell admitted that it "did not perform the compressive [strength] testing that the Building Code prescribes as one of the ways for a testing laboratory to ensure that a mix meets specifications." However, Testwell claimed that the Building Code also authorized the use of the "previously accepted mix" method, and that "[a]lthough Testwell may not have followed this latter approach precisely, its intent was to do so." Insofar as the indictment alleged that Testwell filed false mix design reports stating that it had performed compressive strength testing (the "test batch" method) and falsified records, Testwell questioned, among other things, whether there was proof that: (1) Kancharla and the other individual defendants knew that the reports contained false statements and acted with intent to defraud a public entity; (2) the defendants offered and presented the reports to a public agency to become part of their records; and/or (3) the reports made their way into the business records of clients and, if so, that the defendants intended them to be entered there.

While the motion was sub judice, by letter dated April 21, 2009, Testwell applied to renew its license, which was due to expire on June 17, 2009. In May 2009, Testwell filed for chapter 11 bankruptcy protection. By order entered on or about June 29, 2009, Supreme Court (Edward J. McLaughlin, J.) found that the grand jury minutes provided legally sufficient evidence to show fraud in that Testwell, among other things, had issued reports stating that it used the test batch method, whereas "the evidence presented to the Grand Jury demonstrated that Testwell created most of its mix design reports without conducting any laboratory testing of concrete."

By letter dated July 8, 2009, the Department informed Testwell that it would "consider" renewing its license subject to certain conditions, including that Testwell: (1) be placed on probation for two years, during which time the Department could revoke the license without a hearing for any violation of the terms of the renewal; (2) provide proof that indicted persons were not engaged by Testwell in technical or managerial positions related to concrete testing; and (3) retain the services of an independent third party, acceptable to the Department and qualified to assess and evaluate concrete testing operations during the probationary period, to oversee technical operations, including development of a new quality assurance/quality control plan for monitoring and auditing technical activities.

The Department requested that Testwell indicate whether it would accept the conditions within 30 days and advised Testwell that

> "[i]n the interim, Testwell may continue to perform services provided that Testwell is directly supervised by an independent, licensed concrete testing laboratory acceptable to the Department. This independent concrete testing laboratory shall be capable of overseeing the technical aspects of Testwell's concrete testing operations, both in the laboratory and at the job site."

By letter dated July 10, 2009, Testwell, by counsel, replied that "[w]hile [it] was willing to accept and immediately implement the Department's conditions during its post-renewal probationary period, Testwell requests that the Department remove the interim condition that a third-party testing laboratory be retained to oversee Testwell's operations." As an alternative, Testwell proposed that it retain Irwin Cantor P.E. or an engineer acceptable to the Department to assess and evaluate Testwell's concrete testing operations and to implement the Department's other conditions. Testwell also argued that the denial of its motion to dismiss the indictment, like the indictment itself, had no impact on whether Testwell met the qualifications for renewal.

By letter dated July 15, 2009, the Department accepted Testwell's modification of the interim condition, stating that it would accept a third-party entity, "such as an engineering firm or other entity with the technical expertise to oversee concrete testing operations, to oversee Testwell's operations in the interim in place of a independent concrete testing laboratory." The Department disagreed with Testwell's assessment of the legal significance of the order denying the motion to dismiss the indictment and advised Testwell that it was "available to meet with Testwell and any proposed third-parties as described in the terms of renewal to resolve this issue."

By letter dated August 12, 2009, the Department informed Testwell of its determination to deny renewal of Testwell's license pursuant to Administrative Code §§ 28-401.12 and 28-401.19 (5), (7) and (13) on the grounds that "Testwell's actions and inactions violate the terms of the Commissioner's order, constitute fraudulent dealings, and reflect poor moral character that adversely reflects on its fitness to conduct the regulated work." Although the Department ordered Testwell to cease and desist all concrete testing immediately, it advised Testwell that

"[i]n accordance with Administrative Code § 28-401.12, Testwell is hereby afforded the opportunity to demonstrate why renewal of its concrete testing laboratory license should not be denied on the additional grounds of fraudulent dealings and poor moral character. Such submission must be received by Friday, August 14, 2009, noon."

By letter dated August 14, 2009, Testwell protested all aspects of the Department's denial, contending that "the stated grounds are not a proper basis upon which the Commissioner should deny renewal of the license. Rather, the facts demonstrate that Testwell has acted in compliance with the orders of the Department, according to the terms that were communicated to Testwell." In support, Testwell asserted that it had acted in good faith to satisfy the Department's terms for a renewal license, which were not made subject to a deadline, and had not engaged in fraudulent conduct and did not display poor moral character. In this regard, Testwell contended that the July 8th letter asked only that Testwell indicate its willingness to accept the proposed conditions within 30 days, not that it satisfy all of the conditions within that time period. Testwell also reiterated that an indictment is not a finding of guilt and argued that in any event, the Department "has mistakenly conflated the alleged misconduct of the former management of Testwell with the question of whether the company, as operated and managed today, is a worthy recipient of a renewed [l]icense." Thus, Testwell asserted that denial of a renewal license was not compelled by the facts, was not necessary to protect the public and would impose an undue and unnecessary hardship.

By letter dated August 18, 2009, the Department adhered to its decision to deny renewal and restated its order that Testwell cease and desist all concrete testing operations immediately. The Department explained that Testwell's

"point that the July 8 letter did not require that all of the conditions be satisfied within thirty (30) days is . . . correct, but irrelevant. Testwell's failure to comply with the requirement that, during the thirty (30) day period commencing July 8, 2009, it obtain independent technical oversight acceptable to the Department, of its concrete testing laboratory operations during this period, coupled with the evidence of its operation on August 11, 2009 at 795 Columbus Avenue, warrants the Department's determination

to deny the renewal for failure to comply with the Commissioner's order."

The Department rejected Testwell's argument that changes in management and the appointment of a restructuring officer by the Bankruptcy Court justified renewal of the license, in that

> "[y]our letter pointedly makes no mention of Testwell's ownership and the Department has no evidence suggesting that the lab's ownership has changed since the indictment. Morever, although Testwell's guilt or innocence will be determined in the upcoming trial, the trial court's indication on the omnibus motion regarding the nature of the reports Testwell produced and the admissions Testwell made in that motion constitute a basis for the Department's determination that Testwell engaged in fraudulent dealings and displayed poor moral character that adversely reflects on Testwell's fitness to conduct regulated work."

Testwell then commenced this article 78 proceeding seeking to annul the Department's August 12, 2009 decision not to renew its license. The Department cross-moved to dismiss the petition. On September 1, 2009, Supreme Court amended the petition to include a challenge to the Department's August 18, 2009 determination and granted the amended petition to the extent of vacating the Department's August 12th and August 18th determinations on the grounds that: (1) the Department did not provide adequate notice to Testwell of the prohibited conduct and an opportunity to be heard because the July 8, 2009 letter, by its terms, was an offer to renew, not an order, and (2) "even an undismissed indictment[ ] cannot be used as a basis to terminate a license, the decision of Justice Shulman never having been set aside, and it carries through the decision by Justice McLaughlin on the indictment."[2] We now reverse.

■ "Once licenses are issued . . . their continued possession may become essential in the pursuit of a livelihood . . . In such cases the licenses are not to be taken away without that

---

**2.** The court did not order the Department to renew Testwell's license. Instead, the court stated that the parties were

> "status quo ante, which means you don't know whether you have a license or not unless the City wants to rely on the July 8th letter, at which point you need to stop negotiating terms of engagement and simply engage quickly, because there is nothing before me on the July 8th letter."

procedural due process required by the Fourteenth Amendment" (*Bell v Burson*, 402 US 535, 539 [1971]; *Matter of Daxor Corp. v State of N.Y. Dept. of Health*, 90 NY2d 89, 98 [1997], *cert denied* 523 US 1074 [1998]). Accordingly, due process may prevent the revocation or suspension of a license without notice and a hearing. However, Testwell's license was not revoked or suspended. Rather, the license expired on June 17, 2009, after which the Department issued its July 8, 2009 letter setting forth the interim condition for Testwell's continued operations pending renewal. Because the issuance of a license is an exercise of discretion, there is no property interest in the renewal of an expired license and no constitutional due process right to a hearing (*see Daxor Corp.*, 90 NY2d at 97-98 [finding a clinical laboratory had no property right in an initial or renewed license even though the lab had operated for years under a city license and provisional state licenses]; *Matter of M.S.B.A. Corp. v Markowitz*, 23 AD3d 390 [2005]; *Matter of Active Appliance Corp. v County of Suffolk*, 251 AD2d 659 [1998]).

◼ Although Testwell had no constitutional right to notice and a hearing regarding the renewal of its license, it did have a statutory right to "notice and an opportunity to be heard" under New York City Administrative Code § 28-401.12, which provides that "[t]he department may, following notice and an opportunity to be heard, refuse to renew a license or certificate of competence on any grounds on the basis of which it could deny, suspend or revoke such license." Under this section, Testwell was entitled to reasonable notice and a fair opportunity to be heard with respect to the reasons for the denial of renewal (*see e.g. Torres v New York City Taxi & Limousine Commn.*, 268 AD2d 340 [2000] [revocation of license upheld where petitioner was given reasonable notice and opportunity to be heard]). The record amply demonstrates that these requirements were satisfied.

◼ First, the Supreme Court erred when it found that the Department did not give Testwell sufficient notice of the prohibited conduct and an opportunity to be heard because its July 8, 2009 letter did not constitute an order for Testwell to take specific action by a "drop dead" date or it would be "at risk," and therefore the Department's August 12, 2009 letter rested on the faulty assumption that Testwell had defied a Department order. Testwell received reasonable notice in the Department's July 8, 2009 letter of the interim condition placed on its continued operations after the expiration of its license.

While that letter proposed the terms on which the Department was willing to consider renewing Testwell's license, which Testwell had 30 days to accept, it separately and unequivocally gave Testwell notice that "[i]n the interim, Testwell may continue to perform services provided that Testwell is directly supervised by an independent, licensed concrete testing laboratory acceptable to the Department." In its July 10, 2009 letter, Testwell expressly acknowledged this "interim condition" and requested that it be amended to allow Testwell to retain an engineer, acceptable to the Department, "to assess and evaluate Testwell's concrete testing operations and implement the other conditions proposed by the Department." In its July 15, 2009 letter, the Department accepted Testwell's amendment of the interim condition.

This correspondence demonstrates that Testwell received adequate notice of and in fact agreed to accept the interim condition, as modified, providing that after the expiration of its license, and during the 30-day period it was given to accept the Department's conditions, it could not continue to perform services under its expired license unless Testwell retained an engineer, acceptable to the Department, "to assess and evaluate Testwell's concrete testing operations and implement the other conditions proposed by the Department." Accordingly, the requirements set forth in the Department's July 8, 2009 letter for Testwell's continued operations pending renewal, as modified by the parties' subsequent correspondence, could and did serve as a predicate for the future action taken by the Department in its August 12th and August 18th determinations.

■ Second, Testwell received adequate notice of the charges against it and an opportunity to be heard. In its August 12, 2009 letter, the Department informed Testwell of the specific reasons for the denial of renewal and advised Testwell that, in accordance with Administrative Code § 28-401.12, it had the opportunity to demonstrate why renewal should not be denied. By letter dated August 14, 2009, Testwell availed itself of that opportunity, contesting all of the stated grounds for denial, setting forth its position in detail. By letter dated August 18, 2009, the Department adhered to its decision to deny renewal, responding to each of Testwell's points.

■ Because Testwell received the due process to which it was entitled, and because no hearing was held, the issue before us is whether respondents' determination is supported by a rational

basis and was not arbitrary and capricious (CPLR 7803 [3]; *Matter of M.S.B.A. Corp. v Markowitz*, 23 AD3d at 391).[3]

An action is arbitrary·and capricious when it is taken without sound basis in reason or regard to the facts (*Matter of Pell v Board of Educ. of Union Free School Dist. No. 1 of Towns of Scarsdale & Mamaroneck, Westchester County*, 34 NY2d 222, 231 [1974]; *see also Matter of Arrocha v Board of Educ. of City of N.Y.*, 93 NY2d 361, 363-364 [1999]). Where the agency's determination involves factual evaluation within an area of the agency's expertise and is amply supported by the record, the determination must be accorded great weight and judicial deference (*see Matter of Medical Malpractice Ins. Assn. v Superintendent of Ins. of State of N.Y.*, 72 NY2d 753, 763 [1988], *cert denied* 490 US 1080 [1989]; *Flacke v Onondaga Landfill Sys.*, 69 NY2d 355, 363 [1987]).

The first ground for the Department's determination was that Testwell violated Administrative Code § 28-401.19 (7) ("[f]ailure to comply with this code or any order, rule, or requirement lawfully made by the commissioner"). This violation was based on Testwell's failure to abide by the "requirement [contained in the July 8, 2009 letter] that, during the thirty (30) day period commencing July 8, 2009, it obtain independent technical oversight [of its concrete testing laboratory operations] acceptable to the Department."

A license, being a personal privilege and not a vested right, is subject to reasonable restrictions by an issuing authority (*see Big Apple Food Vendors' Assn. v City of New York*, 228 AD2d 282 [1996], *appeal dismissed* 88 NY2d 1064 [1996], *lv denied* 89 NY2d 807 [1997]; *Matter of Lap v Axelrod*, 95 AD2d 457 [1983], *lv denied* 61 NY2d 603 [1984]). Here, Testwell's alleged misconduct was directly related to the work for which it was issued a concrete testing laboratory license, and the Department

---

3. The substantial evidence test of CPLR 7803 (4) applies only where a hearing has been held and evidence taken pursuant to direction by law (*Matter of Colton v Berman*, 21 NY2d 322, 329 [1967]). However, it may be noted that even if the test applied, the substantial evidence standard requires "such relevant proof as a reasonable mind may accept as adequate to support a conclusion or ultimate fact" (*300 Gramatan Ave. Assoc. v State Div. of Human Rights*, 45 NY2d 176, 180 [1978]). This is "less than a preponderance of the evidence" (*id.*) and, "as a burden of proof, it demands only that a given inference is reasonable and plausible, not necessarily the most probable" (*Matter of Miller v DeBuono*, 90 NY2d 783, 793 [1997] [internal quotation marks and citation omitted]), which may be predicated on both hearsay and circumstantial evidence (*see generally Matter of Café La China Corp. v New York State Liq. Auth.*, 43 AD3d 280, 281 [2007]).

had the authority to impose the interim condition pending the renewal of Testwell's expired license in the interest of public safety (*see Matter of K.C.B. Bakeries v Butcher*, 144 AD2d 894 [1988], *lv denied* 73 NY2d 705 [1989]). The Commissioner rationally found that Testwell failed to comply with the interim condition by "performing such operations during this time without satisfying the oversight requirement, as evidenced by its collection of test samples at 795 Columbus Avenue, New York, New York on August 11, 2009." On this basis alone, it was not arbitrary or capricious for the Department to deny renewal of Testwell's license.

The second ground for the Department's determination was Administrative Code § 28-401.19 (5) ("Fraudulent dealings") and (13) ("Poor moral character that adversely reflects on his or her fitness to conduct work regulated by this code"). The Supreme Court found that this ground was not proved because the Department "is bound by the notion that an indictment, even an undismissed indictment, cannot be used as a basis to terminate a license, the decision of Justice Shulman never having been set aside, and it carries through the decision by Justice McLaughlin on the indictment." This too fails to appreciate that we are now reviewing the denial of renewal of a license, not a suspension or revocation which requires a due process hearing, and that the Department did not rely solely on the indictment in reaching its determination.

The discretion of the Department extends to the determination of what constitutes untrustworthy conduct (*see Matter of Gold v Lomenzo*, 29 NY2d 468, 476-477 [1972]). In finding that Testwell violated section 28-401.19 (5) and (13), the Department relied on Testwell's admissions that it filed mix design reports that falsely alleged they were based on the test batch method, as well as Justice McLaughlin's analysis of the evidence before the grand jury, which led him to find that

> "[a]ccording to the evidence, Testwell did not create four trial batches of concrete, and did not conduct compressive strength tests on any trial batches. Instead, the evidence showed that Testwell learned which mix recipe the concrete contractor, as opposed to the building's owner or project engineer, desired to be approved, and that, virtually always, Testwell used a computer program to create a false mix design report showing that the desired mix recipe had passed compressive strength testing. The fraud-

ulent test report was presented to a Testwell engineer, who certified the false report to be genuine and recommended one of the four mix recipes for use in the building project."

In this regard, Justice McLaughlin noted that 64 false mix design reports from at least nine different construction projects had been introduced into evidence before the grand jury. Further, as to Testwell's claim that it had used an alternate, acceptable method for testing the strength of concrete, Justice McLaughlin observed:

"This alternate method is called the previously accepted mix method, but the evidence before the Grand Jury does not suggest that Testwell used that alternate method. The evidence showed that the reports purported to show that Testwell had used the test batch method, not the previously accepted mix method, and that a test batch report does not resemble a previously accepted mix method report. Moreover, the evidence showed that Testwell did not follow any of the procedures or testing required under the test batch method, but that Testwell used a computer program to generate the reports. From this evidence, the Grand Jury was entitled to infer that the defendants who prepared and approved of those reports knew that the reports were false and acted with intent to defraud the engineers, builders, and building owners who rely on those reports to plan and build a construction project."

Based on the foregoing, the Department rationally found:

"In denying Testwell's omnibus motion, the trial court found the grand jury evidence sufficient to show that Testwell's reports purported to show that Testwell had used one method of generating a concrete mix design when in fact it had used another . . . In fact, Testwell's motion papers in that case admit that it did not use the method purportedly reflected in the reports . . . [T]he finding of the trial court regarding the nature of the reports Testwell produced, coupled with its admissions, constitutes fraudulent dealings and poor moral character that adversely reflects on Testwell's fitness to conduct regulated work."

As to Testwell's claim that its past conduct should be excused due to its alleged change in management, the issue here is not

whether Testwell "corrected any earlier deficiencies, or how well [its] facilities function now" (*Daxor Corp.*, 90 NY2d at 101). The Department denied the applications because Testwell's fraudulent dealings and poor moral character in the course of the work for which it was granted a concrete testing laboratory license adversely reflect on Testwell's fitness to conduct the regulated work, a determination that is entitled to deference (*id.*). Further, as the Department noted, Testwell made "no mention of Testwell's ownership and the Department has no evidence suggesting that the lab's ownership has changed since the indictment."

Accordingly, the order of the Supreme Court, New York County (Jane S. Solomon, J.), entered September 1, 2009, which granted the amended petition to the extent of annulling the Department's August 12, 2009 and August 18, 2009 determinations, should be reversed, on the law, without costs, the petition denied and the proceeding brought pursuant to CPLR article 78 dismissed.

CATTERSON, RENWICK, DEGRASSE and MANZANET-DANIELS, JJ., concur.

Order, Supreme Court, New York County, entered September 1, 2009, reversed, on the law, without costs, the amended petition denied and the proceeding brought pursuant to CPLR article 78 dismissed.