Conway, Ch. J.
This appeal is taken directly to this court from
the Supreme Court order pursuant to the provisions of the Civil Practice Act (§ 588, subd. 4) upon the ground that the sole question involved is the constitutionality of section B30-16.0 of the Administrative Code of the City of New York, which provides: ‘ ‘ B30-16.0 Suspension or revocation of licenses. Every holder of a license, upon retiring from the electrical business or upon the occurrence of any other cause for the suspension or revocation of such license, shall notify the commissioner in writing of such fact, at the same time enclosing the license certificate. The commissioner may, by an order in writing, suspend or revoke any license issued by him after a hearing on notice before the license board and, upon good cause shown, including, among other things, being principally engaged in other business, farming of licenses, failure to file applications for certificates of inspection, contract work by holders of special licenses, fraudulent dealing, *561 misrepresentation or conviction of crime by a competent court.” (Emphasis supplied.)
In 1926, petitioner was licensed as a motion picture operator by respondent commissioner and has had that license continuously from that time until the present, with the exception of the years 1943 and 1944. In 1928, petitioner was licensed as a master electrician by respondent commissioner and has had that license continuously from 1928 to June 17, 1955, with the exception of the years 1943 and 1944. Petitioner admits that, prior to June 17, 1955 (the date of the order of the Commissioner of the Department of Water Supply, Gras and Electricity here sought to be reviewed), he had been employed for three nights a week as a motion picture operator at the Trans-Lux Theatre, from the hours of 6:00 p.m. to 12:00 p.m. He claims, however, that he was engaged as a master electrician during the hours when he was not engaged as a projectionist.
At the hearing held on June 7,1955, petitioner, in response to a question as to what business he was in, replied: “ I am a projectionist ”. An inspector’s report discloses that the inspector spoke “ to Mrs. Spielvogel and she told me that he works steady as a motion picture operator. ’ ’ Petitioner further testified at the hearing that he had his name on the window of a hardware store and that the owner of the store takes orders for his services as an electrician and he gets them from the store owner.
The board offered to allow petitioner to put Ms license in escrow until such time as he left the motion picture industry, but petitioner declined.
The following motion was made and duly seconded before the board: ‘ ‘ Resolved, it be recommended to the Commissioner that Ms [petitioner’s] Master Electrician’s License No. 6280 be suspended until such time as he appears before the Board and demonstrates to them that he is not principally engaged in other business, provided, however, that such appearance is made on or before December 31st, 1955, as after such date no opportumty to be heard will be granted him and the renewal of the license will be denied, as he has been found guilty of the charge of being principally engaged in other business.” On or before the 17th of June, 1955, the respondent commissioner notified petitioner in writing of the above resolution of the board.
Subsequently, petitioner brought tMs article 78 proceeding to (1) annul the determination of respondents suspending petition *562 er’s master electrician’s license, and to (2) direct the respondent commissioner to issue the license to petitioner. Only one contention was made at Special Term, the same contention presently here, viz., that that portion of the Administrative Code of the City of New York which enables the commissioner to suspend or revoke a license, after a hearing on notice before the board, on the ground of “ being principally engaged in * # * business ” other than that of a master electrician, is violative of article I (§§ 6,1) of the Constitution of the State of New York and also the Fourteenth Amendment (§1) of the Constitution of the United States.
No issue is raised concerning the power of respondents to regulate all persons engaged in the electrical field, and petitioner concedes that respondents have that power.
As the majority of the court said in Defiance Milk Products Co. v. Du Mond (309 N. Y. 537, 540-541) in reference to the constitutionality of statutes The applicable rules of law are well known. Every legislative enactment carries a strong presumption of constitutionality including a rebuttable presumption of the existence of the necessary factual support for its provisions (Borden's Co. v. Baldwin, 293 U. S. 194, 209, 210). If any state of facts, known or to be assumed, justify the law, the court’s power of inquiry ends (United States v. Carolene Products Co., 304 U. S. 144, 154). Questions as to wisdom, need or appropriateness are for the Legislature (Olsen v. Nebraska, 313 U. S. 236, 246). Courts strike down statutes only as a last resort (Matter of Ahern v. South Buffalo Ry. Co., 303 N. Y. 545, 555, affd. 344 U. S. 367) and only when unconstitutionality is shown beyond a reasonable doubt (Lindsley v. Natural Carbonic Cas Co., 220 U. S. 61, 79; Matter of Fay, 291 N. Y. 198, 206, 207). But, for all that, due process demands that a law be not unreasonable or arbitrary and that it be reasonably related and applied to some actual and manifest evil (Matter of Jacobs, 98 N. Y. 98, 110; Fisher Co. v. Woods, 187 N. Y. 90; Nebbia v. New York, 291 U. S. 502). And even though a police power enactment may have been or may have seemed to be valid when made, later events or later discovered facts may show it to be arbitrary and confiscatory (Abie State Bank v. Bryan, 282 N. Y. 765, 772).”
Thus, the sole questions presented for our determination are whether (1) the City Council of the City of New York had a reasonable basis upon which to act, (2) whether the enactment was *563 reasonable when made and reasonably related to some actual manifest evil, and (3) if so, whether subsequent events have shown the enactment to be arbitrary and confiscatory.
It is clear that the City Council had a reasonable basis upon which to act in view of the inherently dangerous nature of electricity and, in fact, petitioner by conceding that power of regulation concedes that a reasonable basis exists for the legislative body to act.
The manifest evil to which the legislation was addressed was the damage and injuries which can be caused by electricity when not properly handled. The exact nature or composition of electricity is unknown, even to this day, and all that our men of science have been able to do is to chart a behavior pattern of this unknown quantity which enables us to harness and control it. The legislative intent behind the enactment of the legislation is set forth in the Administrative Code itself, where the purpose is stated as follows: 1 ‘ B30-2.0 Purpose. Since there is danger to life and property inherent in the use of electrical energy, the electrical code is enacted to regulate the business of installing, altering or repairing wiring and appliances for electric light, heat or power in or on all real property within the building lines in the city of New York and the licensing of all persons who engage in such business.” With this thought in mind the Legislature defined a master electrician as follows: “ Master electrician. Any person, partnership or corporation who engages in or carries on as his or its regular business the business of installing, erecting, altering, extending, maintaining or repairing electrical wiring * # * and who carries on such business as an independent contractor having the final determination and the full responsibility for the manner in which the work is done, for the materials used and for the selection, supervision and control of any persons employed on the work engaged in by said person, partnership or corporation. ’ ’ (Administrative Code of City of New York, § B30-4.0, subd. 54; emphasis supplied.) Therefore, it appears that the master electrician is the person who has “ the full responsibility ” for everything that is done. He has the full responsibility for the final determination in the manner in which the work is done and the materials which are used. He has the full responsibility for the selection, supervision and control of all persons employed by said partnership, person or corporation. In other words, *564 the master electrician is the person upon whom culpability is placed in the event that anything is improperly done, and it is he to whom the City of New York looks for full responsibility. In addition, the City Council and the Department of Water Supply, Gas and Electricity has provided that any firm, partnership or corporation shall not have more than one master electrician in its employ (Administrative Code of City of New York, § B30-4.0, subd. 55; Bules & Regulations Relating to Conduct of Licensed Electricians, No. 4). The Administrative Code provides that a member of the partnership shall hold the master electrician’s license as a representative under the name of the partnership, and that an officer of the corporation shall have the license issued to him as the representative of the corporation. It is further provided in the rules that, if a person holding a master electrician’s license shall become employed by a firm, partnership or corporation, he must surrender his license when he becomes so employed. Therefore, the effect is that in any business entity doing electrical contracting work, there is only one master electrician, and it is upon this single individual that the full responsibility falls for all the work done by this business entity, whether it be a small firm or a gigantic corporation. In this manner the Licensing Board of the Department of Water Supply, Gas and Electricity has full and complete control of a corporation or a partnership, as well as an individual firm, regardless of its size, for since there is only one person who represents any of them as a master electrician, the taking away of that person’s license immobilizes, at least temporarily, the entire entity. The result is that there would be a natural tendency towards rigid adherence to all the rules or regulations set forth in the Administrative Code itself and those promulgated by the Department of Water Supply, Gas and Electricity. There would be very little tendency on anyone’s part to deviate in the slightest, either in an effort to save time or money, because, if such violation became known, then the firm, partnership or corporation concerned would be in the position of finding that it could no longer operate at all, since the board could revoke the master electrician license of the representative, causing all business activity on the part of the entity concerned to come to an end. In this way, the City Council has found a method of best protecting the residents from injury or damage from irresponsible electrical work by the means of forcing *565 responsibility upon those who operate in this area of endeavor.
As we pointed out in People ex rel. Stepski v. Harford (286 N. Y. 477, 484-485): "It is not unreasonable for municipal authorities to insist that the responsibility for altering, repairing or making connections to any part of the plumbing system in their cities shall be upon men of good repute, character and responsibility who have a place of business in the affected city, who have passed an examination as to their competency in their trade and who may be personally found promptly and held to that responsibility, by the municipality or its residents, for acts of commission or omission by themselves or those whom they have employed. We know of no.trade, business or calling in the community which more vitally affects the public health and safety of city dwellers than that of plumbing.” (Emphasis supplied.) That has equal applicability to the case before us.
With this in mind, it is manifest that there is a reasonable basis for requiring that master electricians be not principally occupied in any other business. If a person who is a master electrician is not principally engaged in the electrical business but is principally engaged in and relies on some other endeavor, the degree of responsibility which is forced upon him to adhere to the legislative enactments and the board’s regulations and to prevent him from “ cutting corners ” in order to save time or money is greatly reduced, for the power which the board has over him, viz., that of revoking or suspending his license, is not as certain a method of control as it is over those who are principally engaged in the business. The City Council, realizing that, when an electrical accident occurs, it is invariably either fatal to a person involved or causes great damage, has acted with the necessary thoroughness to enforce responsibility with reference to its enactments or the rules of the board, and in so doing has reasonably decided that a person engaged in such business must be principally engaged in it. Those principally engaged in the business must protect their business interest by protecting their master electrician’s license, or their business will no longer exist. Those not principally engaged in the electrical business and who have a master electrician’s license, need not fear as much as the others the revocation of that license since they are not principally engaged in that business and the result is that the residents are not afforded the degree of protection to which they are entitled, particularly in view of the *566 deadly nature of electrical current. Clearly, this in and o'f itself, is a reasonable basis for the legislation of which complaint is made.
The petitioner makes several extraneous arguments to support his contention that the enactment attacked is unconstitutional. Thus, he contends that he lost his license merely because he did not earn sufficient money in the electrical business. That question is not before us — the only question we are presented with is the reasonableness of the enactment and we are not to inquire into the quantum of work performed or money earned as a master electrician or as a motion picture projectionist. That would only relate to the issue of whether petitioner was principally engaged, and whether the board had sufficient evidence to support its findings that he was principally engaged in other business. Petitioner only questioned the constitutionality of the enactment and, by doing so, in effect, conceded that the board was correct in its determination that he was principally engaged as a projectionist, and, in fact, if the petitioner were now to be heard urging that the board did not have sufficient evidence to support its determination, this appeal would have to be dismissed, for an appeal as of right from the Special Term lies only when the sole issue involved is the constitutionality of a statutory provision.
Similarly petitioner’s attempt to discredit the statement of the commissioner to the effect that: “ Records of the Fire Department indicate that many persons have been electrocuted together with the loss of property due to improper installations or repairs of electrical wiring as a result of improper supervision, or lack of supervision ”, by stating that petitioner has an unblemished record, will not withstand analysis. Such argument does not go to the reasonableness of the legislative enactment. The reasonableness of the enactment as such, is clearly not dependent upon whether or not the petitioner is qualified.
It must be noted that Special Term pointed out that: “ The statute here involved merely forbids petitioner from being an employing (Master) electrician upon whom falls more than perfunctory responsibilities, such as selecting employees, selecting proper materials and supervising all electrical installations and repairs.” Therefore, the most this enactment can be said to accomplish is that of preventing the petitioner from being *567 an employer, for it certainly does not prevent him from being a journeyman electrician in the employ of someone else.
The keynote of the electrical code is supervision and responsibility. The supervision flows from the New York City authorities over the persons engaged in the electrical contract work, and the responsibility is the responsibility of the persons engaged in that business in observing the regulations pertaining to it. The lever which the city uses is the master electrician’s license, for this is the license which a firm, partnership or corporation is required to have in order to participate in that business, and it is the single licensees of those business entities that the city holds responsible for all acts carried on by those businesses. It is in this manner that the City Council of the City of New York has seen fit to best protect its inhabitants from the fatal dangers which attend faulty and irresponsible electrical installations, and such cannot be said to be unreasonable.
The order should be affirmed, with costs.