■ In the Matter of MICHAEL CAMBRIDGE, Respondent, v COMMISSIONER OF THE NEW YORK CITY DEPARTMENT OF BUILDINGS et al., Appellants. [788 NYS2d 84]—

Order and judgment (one paper), Supreme Court, New York County (Michael D. Stallman, J.), entered December 19, 2003, which granted the petition to annul respondent's determination denying petitioner's application for a license as a master electrician, and remanded the matter to respondent with a direction to grant the application, unanimously reversed, on the law, without costs, and the petition denied and dismissed.

In March 2000, petitioner filed an application for a master electrician's license. In his sworn application, petitioner stated that from September 10, 1990 to the date of the application he had been employed as a journeyman electrician by Green's Electrical Service Inc., in Mount Vernon, New York. After having passed the written examination, petitioner submitted additional documents from George D. Green, indicating that he had been employed by Green on a full-time basis from May 1991 to March 2001 and part time from March 2001 to November 2001. Petitioner also submitted his federal tax returns for 1991 through 1996 and a Social Security Administration statement of his earnings for 1988 through 2000.

The tax returns reflected no income from salary in the years 1991 through 1996. With each return was submitted a "Schedule C," a statement of profit or loss from a "sole proprietorship," listing petitioner's occupation as "Electrician" and his business address in New York City. Each year's return deducted itemized business expenses for such items as supplies, depreciation, repairs and maintenance, office expense, car and truck expense, and travel. Petitioner's Social Security statement reflected that he was employed by Green only from 1997 to 2000 and indicated no paid employment at all in the years 1991 through 1996.

On June 3, 2002, petitioner appeared before the license board. Under questioning about the discrepancy between his statement of employment and his tax returns, petitioner told the board that he had always worked full time for Green, whom he had known for his entire life, and that Green's accountant prepared his tax returns and sent them to him for his signature. He said that he did not review the returns before signing them, which he did "on trust," and that he was unaware that he was represented on the returns to be the sole proprietor of a business. The board observed that petitioner "may have been put in a bad position," but since he signed the tax returns under oath, swearing that the information contained in them was correct, it had no choice but to recommend to the City Department of Buildings that his application be denied.

After his appearance before the board, petitioner submitted

letters from Green's accountant, his own accountant, and Green's wife (writing on Green's behalf because he was incapacitated), essentially confirming his testimony that it was Green's decision to issue 1099 forms instead of W-2 forms.

The Commissioner of the Department of Buildings denied petitioner's application on the ground of want of good moral character, as evinced by the hearing testimony and documentary evidence indicating that for at least six of the years preceding his application, petitioner was "the principal of a company that engaged in the installation, alteration or repair of wiring or appliances for electric light, heat or power within the City of New York without a license," and that he submitted tax forms to the federal government identifying himself as the sole proprietor of an electrical contracting business, in direct violation of the New York City Electrical Code (Administrative Code of City of NY § 27-3017). The Commissioner stated that, even assuming the truth of his testimony that he did not review his tax forms, an admission that petitioner failed to review documents that he swore were true and accurate and then submitted to a government agency "reflects poorly on [his] ability to be reliable, accurate and trusted—all important traits of a licensee of good moral character." Referring to petitioner's posthearing evidence, she stated that it was "inconsequential who was responsible for giving you the aforementioned forms or why you were given them." What was important was that petitioner had an opportunity and the obligation, "as would be expected of a licensee of good moral character," to review his tax forms and correct any erroneous or misleading information.

Petitioner commenced this CPLR article 78 proceeding seeking to annul the Commissioner's determination as arbitrary and capricious and lacking a rational basis in the record. The court granted the petition on the ground that there was no evidence to support the Commissioner's determination that petitioner was the principal of a company or that he represented himself as the sole proprietor of an electrical contracting company, and no evidence that petitioner lacked good moral character. The court remanded the matter to the Department of Buildings with a direction to grant petitioner's license application. We reverse.

The New York City Electrical Code (Administrative Code, tit 27, ch 3) was "enacted to regulate the business of installing, altering or repairing wiring and appliances for electrical light, heat, power, signaling, communication, alarm or data transmission in the city of New York and the licensing of all persons who engage in such business," in recognition of the "danger to life and property inherent in the use of electrical energy" (Adminis-

trative Code § 27-3002). As applicable herein, Administrative Code former § 27-3004 (61) (eff until Jan.1, 2003) defined a master electrician as: "Any person, partnership or corporation who engages in or carries on as his, her or its regular business, the business of installing, erecting, altering, extending, maintaining or repairing electrical wiring, apparatus, fixtures, . . . and who carries on such business as an independent contractor having the final determination and the full responsibility for the manner in which the work is done."

Administrative Code former § 27-3017 (a) prohibited a person, partnership or corporation "not the holder of a license" from performing such work or causing any such work to be done by any such person, partnership or corporation, "unless employed by and working under the supervision of a person, partnership or corporation holding a license as defined herein," as well as from "falsely represent[ing] that he, she or it holds such license." Administrative Code former § 27-3107 (b) further prohibited the making of false statements or causing another to make a false statement, "in an application for a license[,] . . . or in any proof or instrument in writing in connection therewith."

Applicants for licenses must be "of good moral character" (§ 27-3010). To that end, the license board "shall investigate the character and fitness of all applicants for licenses who shall have passed the required examination" (§ 27-3009 [c]).

The court found in the instant case that there was no evidence to support the Commissioner's determination that petitioner was the principal of a company or that he represented himself as the sole proprietor of an electrical contracting company. However, petitioner's sworn tax returns indicating that he was the sole proprietor of an independent business and that his principal business or profession was that of an electrician constitute evidence of exactly that. The court also found that there was no evidence that petitioner lacked good moral character. But it is clear from her determination that the Commissioner considered petitioner's testimonial denial that he was an independent contractor and the other submissions indicating that he actually was on Green's payroll, concluded that, rather than indicating his actual status as an independent electrical contractor, his tax returns might reflect his failure to review them before swearing to their truth and submitting them to the IRS, and determined that such failure would be a cause for concern about his moral character. "[T]he master electrician is the person who has *the full responsibility* for everything that is done. He has the full responsibility for the final determination

in the manner in which the work is done and the materials which are used. He has the full responsibility for the selection, supervision and control of all persons employed by said partnership, person or corporation. In other words, the master electrician is the person upon whom culpability is placed in the event that anything is improperly done, and it is he to whom the City of New York looks for full responsibility" (*Matter of Spielvogel v Ford*, 1 NY2d 558, 563-564 [1956], *appeal dismissed* 352 US 957 [1957]). In view of this grave responsibility imposed on licensed master electricians by the City Council "to best protect its inhabitants from the fatal dangers which attend faulty and irresponsible electrical installations" (*id.* at 567), we cannot find that the Commissioner's determination is arbitrary or capricious or without a rational basis in the record. Concur—Saxe, J.P., Ellerin, Nardelli, Gonzalez and Catterson, JJ.