■ In the Matter of DAIMLERCHRYSLER COMPANY, LLC, Petitioner, v BARBARA G. BILLET, as Commissioner of Taxation and Finance, et al., Respondents. [858 NYS2d 836]—

Kane, J. Proceeding pursuant to CPLR article 78 (initiated in this Court pursuant to Tax Law § 2016) to review a determination of respondent Tax Appeals Tribunal which sustained a sales and use tax assessment imposed under Tax Law articles 28 and 29.

Petitioner manufactures motor vehicles which it sells to franchised dealers, who then sell the vehicles to consumers. Under the New Car Lemon Law (hereinafter the Lemon Law), when a motor vehicle manufacturer is unable to remedy substantial defects in a new vehicle, the manufacturer is required to, at the consumer's option, either replace the defective vehicle with a comparable one or refund the full purchase price to the consumer (*see* General Business Law § 198-a [c] [1]). Petitioner accepted the return of 21 defective motor vehicles from consumers and provided comparable replacement vehicles that petitioner purchased from franchised dealers. Realizing that sales tax was paid on the purchase of the original vehicles and the replacement vehicles, petitioner sought a refund of the sales tax it paid on the replacement vehicles. The Department of Taxation and Finance denied the request. An Administrative Law Judge upheld the denial after a hearing, and respondent Tax Appeals Tribunal affirmed that determination. This proceeding ensued.

---

The governing statutes and regulations required petitioner to pay sales tax on its purchase of the replacement vehicles. A refund of sales tax to a vendor is permitted if a contract is cancelled and the property is returned (*see* 20 NYCRR 534.6 [a]). Similarly, if merchandise is exchanged, sales tax is only required for the price difference between the new item and the returned item (*see* 20 NYCRR 534.6 [b] [2]). These regulations do not apply here, since petitioner was not the original vendor. While the property was returned and exchanged for a different vehicle, no direct exchange occurred. Instead, petitioner received the defective vehicles from the consumers and purchased replacement vehicles from dealers to provide to the consumers. That purchase from the dealers constituted a second sale subject to sales tax (*see* Tax Law § 1105 [a]; *compare Matter of Sverdlow v Bates*, 283 App Div 487, 490 [1954]). Although purchases for resale are excluded from the definition of retail sales (*see* Tax Law § 1101 [b] [1], [4] [i] [A]; 20 NYCRR 526.6 [c]), and thus not subject to sales tax, petitioner did not resell the replacement vehicles; petitioner provided them to the consumers without further payment in fulfillment of its statutory obligation under the Lemon Law (*compare Matter of West Val. Nuclear Servs. Co. v Tax Appeals Trib. of State of N.Y.*, 264 AD2d 101, 103 [2000], *lv denied* 95 NY2d 760 [2000]).

Neither the Lemon Law nor the Tax Law entitles petitioner to a sales tax refund. The Lemon Law requires manufacturers to accompany purchase-price refunds to consumers with an application and notice for a refund of sales tax from the Department (*see* General Business Law § 198-a [c] [2]), but does not address sales tax refunds when the consumer chooses to have the manufacturer provide a replacement vehicle. Similarly, Tax Law § 1139 (f) explicitly states that the Department shall refund sales tax to consumers who receive a refund of the full purchase price of a defective vehicle pursuant to the Lemon Law, but does not provide for a sales tax refund to manufacturers and does not address the sales tax situation when the replacement vehicle option is selected by the consumer. Although the legislative scheme appears to be aimed at avoiding double taxation when a manufacturer fulfills its statutory obligation under the Lemon Law, the plain language of the Lemon Law and Tax Law only provides for sales tax refunds where consumers choose to receive a refund of the purchase price, not where they choose to receive a comparable replacement vehicle. Even construing the tax statutes most favorably to petitioner as the taxpayer (*see Debevoise & Plimpton v New York State Dept. of Taxation & Fin.*, 80 NY2d 657, 661 [1993]), it is clear that no provision is made for refunds *to manufacturers* of sales tax paid on

purchases of replacement vehicles from dealers simply because the purchases satisfy the consumers' requests for replacement vehicles under the Lemon Law. Hence, the statutes themselves do not support petitioner's request for a sales tax refund.

The Tax Appeals Tribunal correctly concluded that "the Lemon Law does not specify the method by which the manufacturer is to obtain the replacement vehicle." That is, if the consumer elects a replacement in lieu of a refund, the manufacturer may either purchase a comparable vehicle from a dealer (or another source) and give it to the consumer—as petitioner elected to do here—or may supply a vehicle from its inventory. If the former method is selected, a manufacturer who elects to purchase a replacement vehicle is bound by the taxable consequences of that retail sale (*see* Tax Law § 1105; *see also Matter of CS Integrated, LLC v Tax Appeals Trib. of State of N.Y.*, 19 AD3d 886, 889 [2005]). While manufacturers—unlike dealers— are precluded from *selling* (or leasing) vehicles directly to consumers (*see* Vehicle and Traffic Law § 463 [2] [y]), petitioner has not shown that it is precluded from taking a car from its inventory and *giving it* to the consumer as a replacement, which would avoid a taxable consequence associated with purchasing the replacement vehicle from a dealer. While manufacturers are only required to provide a "comparable vehicle" (General Business Law § 198-a [c] [1]), not a new vehicle, as a replacement, and manufacturers such as petitioner may not generally possess used vehicles, the record does not support petitioner's argument that manufacturers are *forced* to purchase a comparable replacement vehicle to comply with their Lemon Law obligations. The Lemon Law does not dictate the method by which manufacturers must obtain replacement vehicles, nor the tax consequences of such purchases.

Petitioner did not meet its heavy burden of overcoming "beyond a reasonable doubt" the "strong presumption of constitutionality" attaching to the sales tax laws as they relate to compliance with Lemon Law obligations (*Port Jefferson Health Care Facility v Wing*, 94 NY2d 284, 289 [1999], *cert denied* 530 US 1276 [2000]; *accord Miriam Osborn Mem. Home Assn. v Chassin*, 100 NY2d 544, 547 [2003]). Petitioner's equal protection claim[1] is premised on the differential sales tax treatment that may result when manufacturers and dealers replace

---

1. A challenge to the constitutionality of legislation may not be brought under CPLR article 78, and the matter should be converted to a combined article 78 proceeding and action for declaratory judgment (*see Walton v New York State Dept. of Correctional Servs.*, 8 NY3d 186, 194 [2007]; *Matter of Seymour v Nichols*, 21 AD3d 1234, 1235 [2005]; *Matter of Capital Fin. Corp. v*

vehicles in order to meet their Lemon Law obligations, as follows: (1) when a manufacturer elects to purchase a replacement vehicle from a dealer, it must pay sales tax on that purchase, whereas (2) when a dealer elects to provide a used replacement vehicle from its inventory (and does not need to purchase one), no sales tax is due on the replacement vehicle because no "retail sale" occurred (Tax Law § 1105 [a]).[2]

First, the argument rests on the faulty premise that manufacturers are *required* to purchase comparable vehicles from dealers; they are not, as discussed above. The other unsupported supposition is that dealers will always have comparable vehicles in their inventory to use as replacement vehicles and will never need to purchase a replacement vehicle and pay sales tax on that purchase.

Equal protection review, which is the same under the Federal and State Constitutions (*see Under 21, Catholic Home Bur. for Dependent Children v City of New York*, 65 NY2d 344, 360 n 6 [1985]), of differential taxation consequences is "subject to the lowest level of judicial review, whether any rational basis supports the legislative choices" (*Port Jefferson Health Care Facility v Wing*, 94 NY2d at 289). Such review has been described as "a paradigm of judicial restraint" (*FCC v Beach Communications, Inc.*, 508 US 307, 314 [1993]), and "is especially deferential in the context of classifications made by complex Tax Laws" (*Nordlinger v Hahn*, 505 US 1, 11 [1992]; *see Trump v Chu*, 65 NY2d 20, 25 [1985], *appeal dismissed* 474 US 915 [1985]). The burden is on petitioner "to negative every conceivable basis which might support it" (*Madden v Kentucky*, 309 US 83, 88 [1940]; *see Trump v Chu*, 65 NY2d at 25). This petitioner has not done.

The disparity about which petitioner complains is a function not of an unconstitutional sales tax scheme but, rather, of the different circumstances of automobile manufacturers and dealers as well as the legislative policy choice underlying the Lemon Law to afford different remedies to consumers of defective new and used vehicles (*compare* General Business Law § 198-a [c] [1] [manufacturer, at consumer's option, must either refund purchase price or replace motor vehicle], *with* General Business Law § 198-b [c] [1] [dealer required to refund purchase price to consumer but may elect to provide comparable vehicle subject

---

*Commissioner of Taxation & Fin.*, 218 AD2d 230, 232 [1996], *appeal dismissed* 88 NY2d 874 [1996], *lv denied* 88 NY2d 811 [1996]; *see also* CPLR 103 [c]).

2. The dealer's acquisition of its inventory of cars would not have been subject to sales tax, as purchases for resale are exempt from sales tax (*see* Tax Law § 1101 [b] [1], [4] [i] [A]).

to consumer's approval]). "The Equal Protection Clause does not forbid classifications. It simply keeps governmental decisionmakers from treating differently persons who are *in all relevant respects alike*" (*Nordlinger v Hahn*, 505 US at 10 [citation omitted and emphasis added]). In several key and obvious respects, manufacturers and dealers are not "alike" or similarly situated: dealers sell directly to consumers and ordinarily have inventory of used and new vehicles and provide warranties on used vehicles, whereas manufacturers largely have mostly newer model vehicles and do not directly sell to consumers, although they provide the warranties on new vehicles. Recognizing these and other differences, parallel but not identical Lemon Law rights and responsibilities were enacted for consumers of new vehicles, who seek redress from manufacturers, and consumers of used vehicles, whose remedy is with the dealer who sold the car to them. Petitioner has failed to demonstrate any constitutional shortcoming in the Lemon Law scheme and its distinctions.

There is similarly no constitutional infirmity with regard to petitioner's claims of an equal protection violation from the disparate *tax* consequences that may result as between a manufacturer's compliance with the Lemon Law in replacing a new vehicle and a dealer's provision of a comparable used vehicle. A manufacturer who takes a new (or newer) vehicle from its inventory to use as a replacement vehicle is treated the same as a dealer who takes a comparable used vehicle from its inventory to use as a replacement vehicle—*neither* makes a retail sale subject to sales tax. If either a manufacturer or dealer purchases a vehicle in order to provide a replacement vehicle to a consumer, *both* are acting in a taxable manner and must pay sales tax.[3] Thus, when dealers and manufacturers are similarly situated, they are taxed in the same manner. Neither the fact that manufacturers often opt (or need) to purchase a comparable replacement vehicle from dealers for practical or financial reasons, whereas dealers often have a supply of comparable used vehicles on hand to use as replacement vehicles, nor the fact that dealers are never required to provide replacement vehicles under the used car Lemon Law (*see* General Business Law § 198-b) results in an equal protection violation just because manufacturers must pay sales tax on their purchases. The Equal Protection Clause "imposes no iron rule of equality,

---

3. The automobile dealers are not represented in this matter and no support is offered by petitioner for its claim that dealers who *purchase* used replacement vehicles from others are not subject to sales tax on those purchases as retail sales.

prohibiting the flexibility and variety that are appropriate to reasonable schemes of state taxation" (*Allied Stores of Ohio, Inc. v Bowers*, 358 US 522, 526 [1959]; *accord Port Jefferson Health Care Facility v Wing*, 94 NY2d at 290).

Thus, the different tax consequences resulting from manufacturers' and dealers' compliance with Lemon Law obligations are neither "palpably arbitrary" nor a product of "invidious discrimination" (*Trump v Chu*, 65 NY2d at 25 [internal quotation marks and citations omitted]) and have a rational basis (*see Nordlinger v Hahn*, 505 US at 11). Contrary to petitioner's contentions, as all *purchases* of replacement vehicles are subject to sales tax, similarly situated taxpayers are treated uniformly and no equal protection violation has been shown (*see id.* at 10-16; *Port Jefferson Health Care Facility v Wing*, 94 NY2d at 289-292; *Tilles Inv. Co. v Gulotta*, 288 AD2d 303, 305 [2001], *appeal dismissed* 97 NY2d 725 [2002], *lv denied* 98 NY2d 605 [2002]). Any argument that manufacturers' usual manner of complying with their Lemon Law obligations to replace vehicles by purchasing them from dealers should be exempt from sales tax can only be rectified by the Legislature and not by judicial intervention.

Cardona, P.J., Spain, Carpinello and Malone Jr., JJ., concur. Adjudged that the proceeding is partially converted to an action for declaratory judgment, without costs, it is declared that General Business Law § 198-a and Tax Law § 1105 (a) have not been shown to be unconstitutional as applied to petitioner, remainder of petition dismissed and determination confirmed.