■ JOSEPH FELDSCHUH et al., Appellants, v STATE OF NEW YORK, Respondent. (Claim No. 92013.) [658 NYS2d 772] —White, J. Appeal from an order of the Court of Claims (McNamara, J.), entered September 18, 1996, which, *inter alia*, granted the State's motion for summary judgment dismissing the claim.

Claimant Joseph Feldschuh is the medical director of claimant Idant Laboratories, a division of claimant Daxor Corporation, which operates a clinical laboratory, a blood bank and a semen bank in New York City. Since February 1993 claimants have been involved in an administrative proceeding with the State Department of Health (hereinafter the Department) involving 517 claimed violations of the Department's regulations.[1] Separate and apart from the administrative proceeding and upon its assumption of the licensing authority of the City of New York Health Department in 1994, the Department advised claimants by letter dated September 30, 1994 that it intended to deny all their pending requests for clinical laboratory and/or blood bank permits and/or tissue bank licenses and to terminate any existing provisional licenses they held. Following receipt of respondent's letter dated March 16, 1995

---

1. By determination dated August 21, 1995, the Administrative Law Judge sustained the charges and recommended that claimants' provisional semen bank license be revoked. This determination was approved by the Commissioner of Health and is now the subject of a CPLR article 78 proceeding pending in this Court.

denying their request for reconsideration, claimants commenced a CPLR article 78 proceeding seeking an annulment of the Department's determination denying their license applications.[2]

On March 28, 1995, a reporter from the New York Daily News contacted Diane Mathis, an associate public information specialist employed by the Department, seeking comment on this matter. Mathis responded by providing the reporter with copies of the above-mentioned letters and a copy of the amended statement of charges filed against claimants. The next day an article appeared in the Daily News stating with respect to claimants' semen bank that a " 'public health risk' " had been found to exist, that their license had been revoked "11 days ago" and that "some sperm from anonymous donors [was not tested] for HIV, hepatitis, syphilis, gonorrhea or chlamydia". Alleging that these statements were "demonstrably false", claimants commenced this defamation action against the State in the Court of Claims. Approximately one year after issue was joined, the State obtained summary judgment dismissing the claim on the ground that there was no proof of publication. Claimants appeal.

We affirm but on different grounds, as we are not persuaded that summary judgment dismissing a complaint in a defamation action is appropriately granted solely on the basis of the defendant's affidavit denying publication. However, where a defendant has a duty to impart certain information to another person, the communication is qualifiedly privileged provided the communicator has a good-faith belief that the information is true[3] (see, 43A NY Jur 2d, Defamation and Privacy, §§ 113, 138, at 356-357, 398; Restatement [Second] of Torts § 598A). Following this rule, qualified immunity has been bestowed upon press statements made by governmental representatives concerning governmental affairs (see, Buckley v Fitzsimmons, 509 US 259, 278, n 9; Chase v Grilli, 127 AD2d 728, 729). Here, Mathis had a duty to make the subject communication since she was charged with the responsibility of responding to inquiries from the press regarding claimants. Thus, we find the communication to be qualifiedly privileged.

Once the defendant establishes that a communication is entitled to a qualified privilege, the burden shifts to the

---

2. The Department's determination was recently confirmed by the Court of Appeals (see, Matter of Daxor Corp. v State of N. Y. Dept. of Health, 90 NY2d 89).

3. Our consideration of this issue is appropriate as it was briefed by the parties.

plaintiff to show that the defendant was motivated by actual malice or ill will (*see, Kalika v Stern*, 911 F Supp 594, 603). This requires a showing that the statements were made with a high degree of awareness of their probable falsity (the constitutional standard of malice) or that malice was the one and only cause for the publication (the common-law standard) (*see, Liberman v Gelstein*, 80 NY2d 429, 438-439). Claimants fell far short of satisfying their burden for they relied solely on the affirmation of their attorney, which lacked probative value since he did not profess to have personal knowledge of the facts (*see, Jabs v Jabs*, 221 AD2d 704). Moreover, malice cannot be inferred from Mathis' statements since they do not appear to be beyond those necessary for the purpose of the privileged communication or to be gratuitously extravagant or vituperative (*see, Herlihy v Metropolitan Museum of Art*, 214 AD2d 250, 259-260).

Mikoll, J. P., Crew III, Yesawich Jr. and Peters, JJ., concur. Ordered that the order is affirmed, without costs.