# SUPREME COURT OF THE STATE OF NEW YORK
## *Appellate Division, Fourth Judicial Department*

**135**
**CA 15-01085**
PRESENT: PERADOTTO, J.P., CARNI, LINDLEY, AND DEJOSEPH, JJ.

---

TATTOOS BY DESIGN, INC., DOING BUSINESS AS
"HARDCORE TATTOO", AND NICHOLE K. HUDSON,
PLAINTIFFS-RESPONDENTS,

V                                         MEMORANDUM AND ORDER

MARK KOWALSKI, HANS KULLERKUPP, ERIE COUNTY
DEPARTMENT OF HEALTH AND COUNTY OF ERIE,
DEFENDANTS-APPELLANTS.

---

MICHAEL A. SIRAGUSA, COUNTY ATTORNEY, BUFFALO (JEREMY C. TOTH OF
COUNSEL), FOR DEFENDANTS-APPELLANTS.

THE LAW OFFICE OF PARKER R. MACKAY, KENMORE (PARKER R. MACKAY OF
COUNSEL), FOR PLAINTIFFS-RESPONDENTS.

---

Appeal from an order of the Supreme Court, Erie County (Diane Y. Devlin, J.), entered April 29, 2015. The order denied the motion of defendants for summary judgment.

It is hereby ORDERED that the order so appealed from is unanimously reversed on the law without costs, the motion is granted, and the amended complaint is dismissed.

Memorandum: Plaintiffs commenced this action asserting in an amended complaint causes of action for defamation and tortious interference with business relations. Plaintiffs alleged that defendants published a press release associating them with a tattoo artist whose work had been linked to eight skin infections. The tortious interference cause of action was subsequently dismissed. We agree with defendants that Supreme Court erred in denying their motion for summary judgment seeking dismissal of the amended complaint.

In 2007, the New York State Department of Health (DOH) began to investigate a cluster of illnesses related to tattoos given by a certain tattoo artist. When interviewed by DOH officials, the tattoo artist stated that he had engaged in tattoo work in the past in Erie County while affiliated with plaintiff Tattoos By Design, Inc., doing business as "Hardcore Tattoo" (Hardcore). Although defendants were unable to confirm that the tattoo artist had been employed by or affiliated with Hardcore, defendant Erie County Department of Health issued a joint press release with DOH and the Niagara County Department of Health, advising that they had identified eight people who had developed skin infections after receiving tattoos from the

tattoo artist, and that the tattoo artist had "reported working in Erie County during 2004 and/or 2005 as an independent contractor for Hardcore" and had "reportedly performed tattoos at several home parties while associated with Hardcore." Earlier drafts of the press release stated definitively that the tattoo artist had worked for Hardcore, but one of the individual defendants asked that the press release be changed to state that the tattoo artist had only reported that he had worked for Hardcore.

"The elements of a cause of action for defamation are a false statement, published without privilege or authorization to a third party, constituting fault as judged by, at a minimum, a negligence standard, and it must either cause special harm or constitute defamation per se" (*Accadia Site Contr., Inc. v Skurka*, 129 AD3d 1453, 1453 [internal quotation marks omitted]). Here, plaintiffs conceded in response to the motion that they could not prove that the statements set forth in the press release are false, thereby conceding that they could not establish a prima facie case of defamation.

Even assuming, arguendo, that plaintiffs could establish a prima facie case of defamation, we conclude that defendants established their entitlement to summary judgment as a matter of law by establishing that the statements are protected by a qualified privilege. "Generally, a statement is subject to a qualified privilege when 'it is fairly made by a person in the discharge of some public or private duty, legal or moral, or in the conduct of his own affairs, in a matter where his interest is concerned' " (*Rosenberg v MetLife, Inc.*, 8 NY3d 359, 365, quoting *Toker v Pollak*, 44 NY2d 211, 219). Defendants, as public health officials, had a public duty to inform the public about the hazards of potential exposure to the subject tattoo artist's work (*see* Public Health Law § 2100; *Feldschuh v State of New York*, 240 AD2d 914, 915-916), and it was within the scope of that duty that the press release containing the allegedly defamatory statements was issued (*see Schell v Dowling*, 240 AD2d 721, 722).

Once defendants established that the statements in the press release were protected by a qualified privilege, the burden shifted to plaintiffs to raise a triable issue of fact "whether the statements were motivated solely by malice" (*Mancuso v Allergy Assoc. of Rochester*, 70 AD3d 1499, 1501; *Feldschuh*, 240 AD2d at 915-916), meaning "spite or a knowing or reckless disregard of a statement's falsity" (*Rosenberg*, 8 NY3d at 365; *see Kondo-Dresser v Buffalo Public Schs.*, 17 AD3d 1114, 1115). Plaintiffs failed to meet that burden. Indeed, plaintiffs conceded that there is no evidence that defendants acted with spite and, as noted, one of the individual defendants insisted on changes to a draft of the press release to make it accurately reflect that the allegedly defamatory statements were based only on what the tattoo artist had reported, thereby demonstrating that defendants did not act with reckless disregard of the statements' falsity.

In light of our determination, we do not address defendants'

remaining contentions.